Wayne **CLYMER, Individually and as President of AFSCME, Local 620, Appellees,**

v.

The **CITY OF CEDAR RAPIDS, Iowa, Appellee,**

**Rickie D. Scofield, Individually and as President of International Association of Firefighters Local 11; and Chauffeurs, Teamsters and Helpers, Local 238, Intervenors–Appellees,**

**Iowa Freedom of Information Council, Iowa Newspaper Association, Iowa Broadcasters Association, and The Gazette Company, Intervenors–Appellants.**

**No. 97–1705.**

Supreme Court of Iowa.

Oct. 13, 1999.

John M. Bickel and Diane Kutzko of Shuttleworth & Ingersoll, P.C., Cedar Rapids, for appellants.

J. Richard Johnson and Jeffrey Tron Vold of White & Johnson, P.C., Cedar Rapids, for appellee Wayne Clymer.

David F. McGuire, Cedar Rapids, for appellee City of Cedar Rapids.

Crystal L. Usher of Nazette, Marner, Good, Wendt & Knoll, Cedar Rapids, for appellee Rickie D. Scofield.

MacDonald Smith of Smith & McElwain Law Office, Sioux City, for amicus curiae Iowa Federation of Labor, AFL–CIO.

Considered by McGIVERIN, C.J., and LARSON, NEUMAN, SNELL, and TERNUS, JJ.

NEUMAN, Justice.

The Gazette Company, a newspaper publisher, sought records from the City of Cedar Rapids concerning city employees' sick leave compensation and usage during 1996. Wayne Clymer, individually and as president of AFSCME, Local 620, resisted the request, claiming much of the information sought was confidential and exempt from disclosure under Iowa Code section 22.7(11) (1997).[1] Resolving the matter by

---

1. As the caption to this opinion reveals, nu-    merous parties either joined or petitioned to

way of declaratory judgment, the district court determined the Gazette was not entitled to individualized sick leave records but could demand access to aggregate data "not attributable to any individual employee." On the Gazette's appeal, we conclude the district court correctly limited access to personal information such as address, gender and birth date, but erred in permitting the disclosure of only aggregate sick leave information. We therefore affirm in part and reverse in part.

## I. Background.

All agree that the controversy is governed by Iowa Code chapter 22, Iowa's "open records" act. At issue is the application of section 22.7(11). The statute states, in pertinent part, that the following public records shall be kept confidential:

> Personal information in confidential personnel records of public bodies including but not limited to cities, boards of supervisors and school districts.

Iowa Code § 22.7(11). Significantly, neither the term "personal information" nor the phrase "confidential personnel records" is defined by statute. *DeLaMater v. Marion Civil Serv. Comm'n,* 554 N.W.2d 875, 879 (Iowa 1996). Thus the parties vigorously debate the meaning and application of section 22.7(11) to the facts before us.

To place the controversy in context and pinpoint the areas of disagreement, the parties furnished the following stipulation: (1) the city has in its personnel files data concerning employee compensation that includes name, birth date, gender, address, department, job title, hire date, bargaining unit status, base salary, and 1996 income broken down by codes representing fourteen payment categories (such as salary, vacation pay, and sick leave) with details

as to dates and hours accrued; (2) the Gazette claims entitlement to all the information just described; (3) all other parties but Teamsters Local 238 agree the Gazette is entitled to name, department, job title, hire date, bargaining unit status, base salary and 1996 income without any breakout of individual pay categories; and (4) the Teamsters also resist disclosure of first and middle name and job title. In summary, all agree the public is entitled to know the names of city employees plus general information concerning their departmental assignment, salary, and annual compensation. At issue is the disclosure of more particularized data.

The Gazette argued before the district court, and urges on appeal, that if the public is entitled to know what the city pays each employee for working, then surely the public is entitled to know what its public servants are paid for *not* working. Underlying its request for each employee's address, gender, and birth date is a purported desire to ensure accuracy in reporting.

Clymer and the unions counter that public employee accountability for hours worked can be achieved without divulging personal data—such as address, gender and birth date—that could potentially threaten an employee's personal security and safety. Disclosing individualized data concerning sick leave, they argue, would necessarily violate public employees' rights to keep their medical histories confidential. They urge the court to find the public's interest in responsible government employment practices satisfied by reporting only aggregate sick leave and compensation figures.

The district court reached its decision by weighing the "far from insignificant" privacy issues advanced by Clymer against "the

---

intervene on each side of this controversy. Intervening on behalf of the Gazette are the Iowa Freedom of Information Council, Iowa Newspaper Association, and Iowa Broadcasters Association. Joining Wayne Clymer are Local 238 of the Chauffeurs, Teamsters and Helpers Union; Rickie Scofield, individually

and as president of International Association of Firefighters, Local 11; and Amalgamated Transportation Authority, Local 620. For the sake of simplicity, we will refer to Clymer or "the unions" to represent the employees' interests and to the Gazette when referring to the media interests.

public's right to know how its money is spent." It struck the balance in favor of the employees, suggesting that in the absence of any hint of payroll abuse by city officials, the Gazette should not be permitted to link sick leave records with individual employees. This appeal by the Gazette followed.

## II. Scope of Review.

■ Cases commenced under Iowa Code chapter 22 are ordinarily triable in equity, thus calling for de novo review on appeal. *KMEG Television, Inc. v. Iowa State Bd. of Regents,* 440 N.W.2d 382, 384 (Iowa 1989). This case is no exception but, given the way it was submitted to the court upon stipulation and argument of counsel, our focus is necessarily on the correction of any error by the court in its interpretation and application of pertinent statutes. *See DeLaMater,* 554 N.W.2d at 878.

## III. Issue on Appeal.

The Gazette claims on appeal that none of the employee information it seeks falls within "personal information in confidential personnel records" protected by Iowa Code section 22.7(11). It argues alternatively that, if the court properly engaged in a balancing test, the public interest in the information outweighs any privacy interest claimed on behalf of city employees.

■ Several fundamental principles guide our resolution of the controversy. Iowa's "open records" act invites public scrutiny of the government's work, recognizing that its activities should be open to the public on whose behalf it acts. *Northeast Council of Substance Abuse, Inc. v. Iowa Dep't of Pub. Health,* 513 N.W.2d 757, 759 (Iowa 1994). Public records are defined under the act to include "all records, documents, tape or other information, stored or preserved in any medium, of or belonging to ... any ... city." Iowa Code § 22.1(3). Disclosure is the rule, and one seeking the protection of one of the statute's exemptions bears the burden of

demonstrating the exemption's applicability. *DeLaMater,* 554 N.W.2d at 878.

In *DeLaMater* this court noted that most states' open records laws, like Iowa's, contain a privacy exemption. *Id.* Often patterned after the exemption in the federal Freedom of Information Act for medical and other personnel files whose disclosure would clearly constitute an invasion of privacy, these provisions strive to balance the competing public and private interests at issue. *Id.; City of Dubuque v. Telegraph Herald, Inc.,* 297 N.W.2d 523, 527 (Iowa 1980). When, as is the case under section 22.7(11), a statutory exemption does not articulate precisely what records or information the legislature considers private, courts commonly apply the following factors as a means of weighing individual privacy interests against the public's need to know:

(1) the public purpose of the party requesting the information; (2) whether the purpose could be accomplished without the disclosure of personal information; (3) the scope of the request; (4) whether alternative sources for obtaining the information exist; and (5) the gravity of the invasion of personal privacy.

*DeLaMater,* 554 N.W.2d at 879.

Because the balancing inquiry is fact specific, reliance on precedent involving different factual scenarios provides only limited assistance. *Id.* Our prior decisions, as well as factually-similar cases from other jurisdictions, nevertheless illuminate the considerations pertinent to applying a privacy exemption. *Id.* We turn to them briefly.

A. *Case law.* In *City of Dubuque* this court considered the privacy exemption (then codified at section 68A.7(11)) in the context of a newspaper's request for the names, addresses, and employment experience of applicants for a city manager vacancy. *City of Dubuque,* 297 N.W.2d at 525–26. Bypassing the question "whether an application for public employment is a

confidential personnel record, or even a personnel record," *see id.* at 526, we nevertheless determined the legislature's failure to exclude employment applications from disclosure, "coupled with its plain intent that we construe the exemptions narrowly," compelled a finding that such documents fell outside section 68A.7(11)'s protection. *Id.* at 527. We note the legislature thereafter amended the statute to cloak employment applications with privacy. *See* 1984 Iowa Acts ch. 1185 § 6 (now codified at Iowa Code § 22.7(18)) (exempting, with exceptions, communications from persons outside government to extent government could reasonably believe such persons would be discouraged from communicating because of potential for public examination); *see also City of Sioux City v. Greater Sioux City Press Club,* 421 N.W.2d 895, 897 (Iowa 1988) ("The decision in the *Telegraph Herald* case no longer provides a useful guidepost for resolving the present controversy [over public employment applications].").

This court held in-house, job performance evaluations exempt from disclosure in *Des Moines Independent Community School District v. Des Moines Register & Tribune Co.,* 487 N.W.2d 666, 670 (Iowa 1992). The written documents were generated during the investigation of complaints lodged against a school administrator. *Id.* at 667. We concluded the employee evaluations constituted personal information in personnel records, noting their location in an investigative file was immaterial. *Id.* at 670.

*DeLaMater* involved a police officer's request to review and copy test scores of individuals who had taken a promotional examination given by the Marion Civil Service Commission. *DeLaMater,* 554 N.W.2d at 876. We acknowledged the public's interest in the grading accuracy of civil service examinations as well as the privacy interests implicated by individual test scores. *Id.* at 880. Striking a balance between these competing interests, we determined the public's interest in testing

integrity could be achieved by revealing the raw scores used in the grading process without linking the name of a candidate to a particular score. *Id.*

Other jurisdictions have dealt directly with the issue of disclosing sick leave information or absentee cards. Given the accountability demanded of public servants, courts have generally found the nominal privacy interest in nondisclosure outweighed by the public's interest in preventing abuse of governmental vacation and sick leave policies, so long as the disclosed sick leave information is of a nonintimate or nonpersonal character. *See Dobronski v. FCC,* 17 F.3d 275, 277–80 (9th Cir.1994) (affirming judgment compelling disclosure of sick leave records to publisher investigating improper usage of sick leave where records contain no personal medical or health information); *Perkins v. Freedom of Info. Comm'n,* 228 Conn. 158, 635 A.2d 783, 792 (1993) (disclosure of numerical data concerning public employee's attendance records, including or limited to sick leave, not an invasion of privacy); *Brogan v. School Committee of Westport,* 401 Mass. 306, 516 N.E.2d 159, 160–61 (1987) (disclosure of absentee records of individual teachers held valid where records requested did not contain information of a personal nature such as medical reason for absence or details of family emergency); *State ex rel. Petty v. Wurst,* 49 Ohio App.3d 59, 550 N.E.2d 214, 216–17 (1989) (public's right to inspect payroll records outweighs any nominal invasion of county employee's privacy); *State ex rel. Jones v. Myers,* 61 Ohio Misc.2d 617, 581 N.E.2d 629, 631 (Ohio Ct.C.P.1991) (privacy interest of sick employee outweighed by public interest in preventing abuse of vacation and sick leave in public arena); *Kanzelmeyer v. Eger,* 16 Pa.Cmwlth. 495, 329 A.2d 307, 310 (1974) (privacy considerations must yield to public's interest in public servants' performance of duty).

We note that some of the foregoing cases contained facts yielding a hint or

"tip" of payroll abuse by public officials, a feature relied upon by the district court to distinguish them from the case before us. *See, e.g., Dobronski*, 17 F.3d at 279. We find the factual distinction irrelevant. The issue is whether the information falls within an exemption from chapter 22's general rule of disclosure, and not whether the public–or its surrogate–suspects abuse before requesting such information.

■ We have found no cases directly addressing the disclosure of a public employee's address, birth date, or gender in the context of a search for information about public employment leave practices. But the basic theme emerging from the few cases dealing with disclosure of public employees' addresses is that such information does not serve the core purpose of the freedom of information statutes–to enlighten the public about the operation or activities of the government. Put another way, a public employee has a substantial privacy interest in his or her address that outweighs the public's interest in disclosure, unless the information is necessary to open the government's actions to the light of public scrutiny. *See United States Dep't of Defense v. Federal Labor Relations Auth.*, 510 U.S. 487, 495, 502, 114 S.Ct. 1006, 1012, 1016, 127 L.Ed.2d 325, 334, 338 (1994) (because privacy interest of bargaining unit employees in nondisclosure of their home addresses substantially outweighs negligible public interest in disclosure to unions, disclosure would constitute unwarranted invasion of personal privacy); *Painting Indus. of Haw. Mkt. Recovery Fund v. United States Dep't of Air Force*, 26 F.3d 1479, 1484–86 (9th Cir.1994) (workers on federally-funded construction projects have substantial privacy interest in information tying their names and addresses to precise payroll figures, especially when requesters have requisite information to compare job classifications to pay raise to determine if employees are being paid prevailing wage); *Minnis v. United States Dep't of Agric.*, 737 F.2d 784, 786–88 (9th Cir.1984) (court denied disclosure of permit applicant list containing names and addresses of individuals seeking river access where requester's motive was purely commercial in nature, no discernible public benefit would result from disclosure, and more than minimal privacy interest was involved). *But see Sheet Metal Workers' Int'l Ass'n Local Union No. 19 v. United States Dep't of Veterans Affairs*, 940 F.Supp. 712, 719 (E.D.Pa.1995) (contractor on federal construction project required to disclose employees' addresses, despite privacy interests, because of strong public interest in enforcement of geographically based minimum wage requirements of Davis–Bacon Act).

■ B. *Analysis.* It is against this backdrop of statutory and common law, from Iowa and elsewhere, that we consider the parties' contentions. First we reject the Gazette's blanket assertion that the information it seeks implicates no privacy rights and therefore cannot command the protection of section 22.7(11). The fact that the detail it seeks is personal to each employee, and is contained within city personnel records, highlights the real question of whether the legislature intended such information to remain confidential. *See DeLaMater*, 554 N.W.2d at 878 (noting court's role of giving effect to legislative purpose underlying exception). Given the ambiguity of the statute, we believe the district court properly engaged in a balancing test of the competing interests.

Turning to the balancing test, we conclude the district court was correct in observing that "there is an obvious relationship between disclosure of leave records and the public's right to know how its money is spent." The newspaper's inquiry legitimately pertains to individual as well as generalized employee practices. It is conceivably impractical for the public to decipher from an aggregate pool of sick leave and other leave information whether an individual is misusing or abusing benefits. *See Kanzelmeyer*, 329 A.2d at 310 (noting inability to ascertain whether school district paid for unauthorized ab-

sences without access to individual attendance record cards). Thus, unlike the circumstances present in *DeLaMater,* the public's interest here cannot be satisfied by the district court's limited disclosure in aggregate form without tying it to an individual's name.

 Moreover, the Gazette's request for compensation records does not contain information deemed by other courts as personal or intimate, such as an employee's medical condition, reason for medical leave, or professional evaluation. By statute, the mere fact that a reporting of compensated sick days might cause embarrassment to an individual employee is not a controlling consideration. Iowa Code § 22.8(3) (free and open examination of records generally in public interest despite inconvenience or embarrassment to public officials or others). In sum, the compensation allocated to–and used by–individual public employees, whether for salary, sick leave or vacation, is a matter of legitimate concern to the public. So long as the information disclosed does not reveal personal medical conditions or professional evaluations, the public has the right to examine it. The district court's ruling on this point must be reversed.

We do not believe the Gazette's request for gender, address and birth date information fares as well in the balancing test. The gravity of the invasion into an employee's personal privacy with this information far exceeds the revelation of sick pay details. Employees serving in the public sector have a legitimate interest in avoiding unwanted contacts at their homes by protecting this information from public dissemination. As counsel for the firefighters aptly stated, public employees "deal with people who don't necessarily have the same boundaries as the people sitting in this courtroom." The Gazette's expressed need to "avoid confusion and verify identification" fails to outweigh the safety and security issues implicated by the revelation of these personal details. Moreover, we are not convinced that the

disclosure of addresses, gender or birth dates advances the general purpose of the open records law or the particular examination proposed here by the media–to open to public scrutiny the use of sick leave and vacation pay by public employees in 1996. The district court was correct in so ruling.

## IV. Conclusion.

The district court's decision to enjoin the city from releasing city employees' addresses, birth dates and gender is correct and must be affirmed. The court's decision to release only aggregate information concerning sick leave, vacation, and other leave information contravenes Iowa Code chapter 22 and must be reversed. We therefore remand to the district court for an amended order permitting the Gazette access to individualized payroll information concerning sick leave pay and other benefits, including dates taken and hours accrued.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**