2012 Ark. 66

**Stuart THOMAS, Appellant**

v.

**Keith HALL, Appellee.**

No. 11–1199.

Supreme Court of Arkansas.

Feb. 16, 2012.

388

Thomas M. Carpenter, Office of the City Attorney, for appellant.

Keith Hall and Valerie Thompson Bailey, for appellee.

Quattlebaum, Grooms, Tull & Borrow PLLC, by: John E. Tull III, E.B. Chiles IV, and Amber Davis-Tanner, Little Rock, for amicus curiae Arkansas Press Association.

ROBERT L. BROWN, Justice.

The sole issue in this appeal is whether use-of-force reports prepared by Lieutenant David Hudson of the Little Rock Police Department are exempt from disclosure under the Arkansas Freedom of Information Act (FOIA). We conclude that they are not exempt, and we affirm for that reason.

On October 29, 2011, an incident arose in front of Ferneau Restaurant in Little Rock, which resulted in the use of force by Little Rock Police Lieutenant Hudson against Chris Erwin. Erwin was charged with three misdemeanor offenses: criminal trespass, resisting arrest, and disorderly conduct. Lieutenant Hudson subsequently wrote a narrative report to his supervisor on October 30, 2011, describing the incident and why he used force against Erwin. On November 14, 2011, Keith Hall, attorney for Erwin, filed a petition against Stuart Thomas, Chief of Police at the Little Rock Police Department, in his capacity as the custodian for the records of the Little Rock Police Department, in which he alleged that Chief Thomas violated the FOIA, codified at Arkansas Code Annotated section 25–19–101 through 25–19–110, by failing to produce Hudson's reports regarding his use of force.[1] In his petition for a hearing and a determination of his citizen request for access to public information, Hall alleged that he initially requested these reports prepared by Lieutenant Hudson on November 7, 2011, but that no reports had been produced pursuant to his request as of November 14, 2011. On November 14, 2011, Hall submitted a second FOIA request to Chief Thomas, and requested disclosure of "all writings, recorded sounds, films, tapes, electronic or computer-based information, or data compilations in any medium re-

---

1. Hall's petition was also filed against Thomas Carpenter, as City Attorney for the City of Little Rock. Carpenter was dismissed from the lawsuit, on Hall's oral motion, during the hearing held on November 22, 2011. A written order dismissing Carpenter was entered on November 28, 2011.

quired by law to be kept or otherwise kept and that constitute a record of the performance or lack of performance of official functions that are or should be carried out by a public official or employee." Through these requests, Hall sought the four use-of-force reports that were prepared by Lieutenant Hudson, including the report prepared following the October 29, 2011 incident at Ferneau.[2] On November 15, 2011, the City of Little Rock responded to both FOIA requests but withheld all four use-of-force reports.

On November 22, 2011, a hearing was held in accordance with Arkansas Code Annotated section 25–19–107(b), which mandates that upon written application by a person whose rights under FOIA have been violated, the circuit court shall conduct a hearing within seven days. After considering testimony and arguments of counsel, the circuit court directed that Chief Thomas produce the four use-of-force reports prepared by Lieutenant Hudson for an in camera inspection by noon on November 23, 2011. The reports were delivered to the circuit court as directed.

On November 28, 2011, the circuit court entered an order finding that Lieutenant Hudson's use-of-force reports were public records involved in the performance of an official duty. The court also found that the use-of-force reports were unrelated to termination or suspension proceedings regarding Lieutenant Hudson or any other employee. The court, accordingly, concluded that the use-of-force reports did not fall within the FOIA exemption for "employee evaluation or job performance records," which is found at Arkansas Code Annotated section 25–19–105(c)(1).

On November 29, 2011, the circuit court entered an amended and substituted order detailing the court's reasoning behind its decision ordering the four narrative reports to be delivered immediately to Hall. Chief Thomas filed a notice of appeal on November 29, 2011. Chief Thomas also sought an emergency stay pending this appeal, which this court granted on December 6, 2011. This court placed the four use-of-force reports under seal by per curiam order dated January 11, 2012. *See Thomas v. Hall*, 2012 Ark. 4, 2012 WL 90023 (per curiam).

We turn then to the issue of whether the four use-of-force reports prepared by Lieutenant Hudson fall within the definition of "employee evaluation or job performance records" under Arkansas Code Annotated section 25–19–105(c)(1), and, are, as a consequence, exempt from disclosure under FOIA.[3] Chief Thomas argues that these use-of-force reports are exempt as employee-evaluation or job-performance records, because they are created so that supervisors can evaluate wheth-

---

2. Those four use-of-force documents are dated and describe in narrative form why force was employed by Lieutenant Hudson in those situations.

3. Chief Thomas also argued before the circuit court that the use-of-force reports were excludable under Arkansas Code Annotated section 25–19–105(b)(12), which exempts from disclosure "[p]ersonnel records to the extent that disclosure would constitute a clearly unwarranted invasion of personal privacy." The circuit court concluded that this exemption did not apply to the reports at issue, because Chief Thomas failed to establish that disclosure of those records would cause a clearly unwarranted invasion of personal privacy. Chief Thomas makes no argument on appeal concerning the personnel records exception found in section 25–19–105(b)(12), and acknowledges this in his reply brief. Accordingly, we will not address any arguments raised in connection with the personnel-records exception. *See State v. Grisby*, 370 Ark. 66, 257 S.W.3d 104 (2007) (arguments raised below but not on appeal are considered abandoned).

er the police officer performed his or her duties pursuant to departmental policy. In response, Hall contends that the use-of-force reports at issue present narrative accounts of the circumstances surrounding Lieutenant Hudson's use of force; that they contain no "evaluation" of the police officer's job performance by a supervisor; and that the reports would be created even if no investigation resulted from the police officer's use of force. Hall claims, in sum, that these reports are not employee-evaluation or job-performance records and are subject to disclosure.

On review of an issue of statutory interpretation, we are not bound by the decision of the circuit court. *Fox v. Perroni,* 358 Ark. 251, 188 S.W.3d 881 (2004). However, in the absence of a showing that the circuit court erred in its interpretation of the law, its interpretation will be accepted as correct on appeal. *Id.* We liberally interpret the FOIA to accomplish its broad and laudable purpose that public business be performed in an open and public manner. *Id.* Furthermore, this court broadly construes the Act in favor of disclosure. *Id.* In conjunction with these rules of construction, we narrowly construe exceptions to the FOIA to counterbalance the self-protective instincts of the government bureaucracy. *Ark. Dep't of Fin. & Admin. v. Pharmacy Assoc., Inc.,* 333 Ark. 451, 970 S.W.2d 217 (1998). A statutory provision for nondisclosure must be specific. *Id.* Less than clear or ambiguous exemptions will be interpreted in a manner favoring disclosure. *Id.* At the same time, we will balance the interests between disclosure and nondisclosure, using a common sense approach. *Id.*

We are also bound by the general canons of statutory construction that apply to this case. The basic rule of statutory construction is to give effect to the intent of the General Assembly. *White*

*County v. Cities of Judsonia, Kensett and Pangburn,* 369 Ark. 151, 251 S.W.3d 275 (2007). In determining the meaning of a statute, the first rule is to construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Id.* We construe the statute so that no word is left void, superfluous, or insignificant; and meaning and effect are given to every word in the statute if possible. *Id.* When the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no need to resort to rules of statutory construction. *Id.* A statute is ambiguous only where it is open to two or more constructions, or where it is of such obscure or doubtful meaning that reasonable minds might disagree or be uncertain as to its meaning. *Id.*

The FOIA provides for disclosure, upon request, of certain "public records," including writings that constitute a record of the performance or lack of performance of official functions that are or should be carried out by a public official or employee. Ark.Code Ann. § 25–19–103(5)(A) (Supp.2011). Further, all records maintained in public offices or by public employees within the scope of their employment are presumed to be public records. *Id.* That the use-of-force documents involved in this case are public records is not disputed by the parties.

As already noted, there are exceptions to the disclosure of public records, including the exemption of "employee evaluation and job performance records" under certain circumstances:

> Notwithstanding subdivision (b)(12) of this section, all employee evaluation or job performance records, including preliminary notes and other materials, shall be open to public inspection only upon final administrative resolution of any

suspension or termination proceeding at which the records form a basis for the decision to suspend or terminate the employee and if there is a compelling public interest in their disclosure.

Ark.Code Ann. § 25–19–105(c)(1).

The FOIA provides no comprehensive definition of "employee evaluation or job performance records," and this court has yet to interpret this language. As addressed above, the first rule in statutory construction is to give effect to the intent of the legislature. *See White County, supra.* In 1987, the General Assembly amended sections of the FOIA in order to clarify what records are not open to the public, including personnel records and employee-evaluation records. *See* Act of Feb. 16, 1987, No. 49, 1987 Ark. Acts 111. The emergency clause in section 5 of Act 49 of 1987 specifically sets forth the General Assembly's intention behind its amendments to the FOIA:

> It is hereby found and determined by the General Assembly that considerable confusion has existed regarding public access to personnel records and employee evaluation records under Act 93 of 1967, as amended; ... that, as a general matter, the confidentiality of personnel records and employee evaluation records is in the public interest to ensure the privacy of employees and the efficacy of the employee evaluation process; that such records should, however, be open to public inspection in certain circumstances; *that guidance from the Attorney General* and additional enforcement mechanisms, including attorney fees, litigation costs, and criminal penalties, are necessary to implement the provisions of this Act regarding such records; and that this Act is designed to clarify the law with respect to such records and should be given effect immediately.

Act of Feb. 16, 1987, No. 49, 1987 Ark. Acts 113 (emphasis added).

This stated public policy behind permitting employee evaluations to be exempt from disclosure under FOIA has also been noted by Professors John Watkins and Richard Peltz in their treatise on the Arkansas FOIA:

> The exemption for evaluation records reflects the public interest in maintaining an effective public employee evaluation system as well as the privacy interests of employees. Without an exemption for such records, supervisory personnel who perform the evaluations may not be candid in assessing employee performance. Also, routine disclosure of the records could undermine one of the important objectives of the evaluation process— identification of weaknesses with an eye toward fostering improvement—by revealing an employee's deficiencies before he has an opportunity to correct them.

John J. Watkins & Richard J. Peltz, *The Arkansas Freedom of Information Act* 205 (Ark. Law Press, 5th ed.2009).

Following this reasoning, the legislature very plainly stated that the purpose behind the exclusion of these documents was twofold: (1) to protect the privacy of employees; and (2) to protect the employee-evaluation process. The employee-evaluation process, as emphasized by Professors Watkins and Peltz, requires supervisors to assess employees' job performances, which in some cases may require identifying an employee's weaknesses. As aptly put by Professors Watkins and Peltz, if such records detailing an employee's performance were routinely made available to the public, a supervisor charged with the duty of evaluating an employee's performance might not be candid in assessing performance.

With that in mind, we also must consider the plain and ordinary meaning of the words used in the statute. The words at issue here, "employee evaluation or job performance records," clearly denote an assessment made by an employer or supervisor of an employee's performance of duties. This definition, when viewed in light of the legislature's intent behind excluding these documents, plainly contemplates that the employee evaluations will be made either by the employee's supervisor or, at the very least, at the direction of the supervisor.

For several years, the Attorney General has defined "employee evaluation or job performance records" as follows:

> [A]ny records that were created by or at the behest of the employer and that detail the performance or lack of performance of the employee in question with regard to a specific incident or incidents are properly classified as employee evaluation or job performance records. The record must also have been created for the purpose of evaluating an employee. The exemption promotes candor in a supervisor's evaluation of an employee's performance with a view toward correcting any deficiencies.[4]

Op. Ark. Att'y Gen. No. 161 (2011); *see also* Op. Ark. Att'y Gen. No. 210 (2009); Op. Ark. Att'y Gen. No. 012 (2004). This definition set out by the Attorney General takes into account both the intent of the legislature to protect employees and the employee-evaluation process, as well as the plain meaning of the words in the statute. For purposes of this appeal, the definition set out by the Attorney General that "employee evaluation or job performance records" are "any records that were created by or at the behest of the employer and

that detail  ₉the performance or lack of performance of the employee in question with regard to a specific incident or incidents" appears to be workable.

Our next inquiry is whether initial use-of-force reports made by a police officer fall within this definition. This court has said many times that Attorney General opinions are not binding on this court. *Gray v. Mitchell*, 373 Ark. 560, 285 S.W.3d 222 (2008); *McMickle v. Griffin*, 369 Ark. 318, 254 S.W.3d 729 (2007); *Ark. Professional Bail Bondsman Licensing Bd. v. Oudin*, 348 Ark. 48, 69 S.W.3d 855 (2002). And yet the General Assembly specifically said that Attorney General opinions should be used for guidance in the FOIA context. *See* Act of Feb. 16, 1987, No. 49, 1987 Ark. Acts 113 ("*that guidance from the Attorney General* and additional enforcement mechanisms . . . are necessary to implement the provisions of this Act regarding such records") (emphasis added). Moreover, we have looked in the past to Attorney General opinions for guidance where we had no case law that addressed the issue at hand. *See, e.g., Hengel v. City of Pine Bluff*, 307 Ark. 457, 461, 821 S.W.2d 761, 763 (1991) ("While we find no cases that address [the 'undisclosed investigation' exception to the FOIA], there are opinions of the Attorney General that conclude that certain arrest reports are subject to disclosure under the FOIA.").

The Attorney General has opined that records such as letters of recommendation or termination, letters of reprimand, and other disciplinary records are classified as "job performance records." Op. Ark. Att'y Gen. No. 76 (1993). Also generally covered by the "employee evaluation and job performance" exemption are records that reflect administrative action in response to

---

4. We recognize in certain contexts self-evaluation of employees may be requested by employers. That is not at issue in the instant case.

or in connection with a complaint and records of *investigations* into [10]alleged employee misconduct. Op. Ark. Att'y Gen. No. 342 (1996) (emphasis added); *see also* Op. Ark. Att'y Gen. No. 261 (1997) (including "documents such as written reprimands, letters of caution, letters related to promotions or demotions, and documents upon which a recommendation for dismissal was based" within the definition of "job performance records").

We further note that section 25–19–105(c)(1) provides that employee-evaluation and job-performance records include "preliminary notes and other materials." The Attorney General has explained that this language was intended to encompass " 'incident reports' routinely compiled *by supervisors*, who may use such documents detailing employee performance in preparing the formal evaluation." Op. Ark. Att'y Gen. No. 076 (1993) (citing John J. Watkins, *The Arkansas Freedom of Information Act* (M & M Press 1988)) (emphasis added). Thus, the intent of the provision seems to be to exempt not only the 'end product,' which is the evaluation itself, but also other documents from which the evaluation report was prepared. *Id.* Such supporting materials include, as opined by the Attorney General, "incident reports, supervisors' memos, and transcripts of investigations, including witness statements." Op. Ark. Att'y Gen. No. 095 (2002); *see also* Op. Ark. Att'y Gen. No. 127 (1994). These opinions do not explain by whom the incident reports are prepared.

There does appear, however, to be an exception to the exemption for initial incident reports that routinely are prepared by a police officer. Professors Watkins and Peltz have explained that while records created by employees at the request of a supervisor for the purposes of evaluating their performance do fall within the exemption, documents *routinely* created by employees in the course of their duties do not. John J. Watkins and Richard J. [11]Peltz, *The Arkansas Freedom of Information Act*, 207 (Ark. Law Press, 5th ed.2009). The Attorney General has similarly opined that

> if a record was *routinely* created as a regular administrative practice and was not created as a part of an investigation of the employee, it does not constitute an employee evaluation/job performance record. Moreover, the fact that a previously created record is later used in an internal investigation of an employee *does not transform the record into an employee evaluation/job performance record.*

Op. Ark. Att'y Gen. No. 032 (2005) (internal citations omitted) (emphasis added). The Attorney General has further explained that "even though a record may have been created at the behest of an employer, it will not necessarily constitute an employee evaluation/job performance record if the employer did not request that the record be created *as a result of a decision to investigate or evaluate the employee.*" Op. Ark. Att'y Gen. No. 191 (2001) (emphasis added).

Turning to the facts of the instant case, the four records at issue apparently were created in accordance with Little Rock Police Department policy as set out in General Order 303. That order details the routine for reporting and documenting an officer's use of force. According to General Order 303,

> A.   Officers employing force to control, arrest or prevent the escape of any person, will, prior to the end of the officer's tour of duty, submit a detailed report outlining the circumstances and exact type of amount of force used in the following circumstances:

394

1. Whenever the use of force results in, may reasonably result in, or is alleged to have resulted in a physical injury to the person. Such force includes, but is not limited to, those instances when:

   a) Physical force is employed to restrain or control an individual, if the restraining or controlling act results in the person falling or being thrown to the ground:

   b) An officer strikes, or attempts to strike, another person with his hands, feet, baton, or other instrumentality, device, or method of force, whether or not injury results to the person....

G.O. 303(IV)(A)(1).

General Order 303 also sets forth the procedures for the "review and documentation of an officer's use of force," and provides as follows:

1. As soon as the suspect is restrained and the scene is stabilized, the involved officer will immediately contact a supervisor.

2. The supervisor will immediately evaluate the circumstances, amount and necessity of the force used.

3. An Offense Report will be completed.

4. An Officer's Report (Form 5600–02) will be made with a complete and detailed account of the exact force used.

5. A Little Rock Police Department Use of Force Report (Form 5200–05) will be completed.

6. The reports will be reviewed by the officer's supervisor, who will make a written evaluation and forward the reports through the Chain of Command to be reviewed at each level and submitted to the Office of the Chief of Police.

7. If necessary, after review by the appropriate Assistant Chief, the Use of Force file will be forwarded to the Chief of Police for his findings and disposition.

G.O. 303(IV)(B).

Chief Thomas testified at the FOIA hearing that it is the policy of the police department that when an officer uses force, he must document the incident and forward that report to his supervisor. Chief Thomas further testified that following the police officer's documentation of the incident, a supervisory review and evaluation is ultimately conducted that determines whether the officer complied with departmental policy on the use of force. He added in his testimony that the initial report is prepared by the police officer and additional information is included by supervisors. He testified too that the police officer's report on his use of force is written to document what happened and that report is written whether or not an investigation into the officer's actions is conducted.

We conclude that use-of-force reports routinely prepared in accordance with General Order 303 are not employee-evaluation or job-performance records. These reports are created by the police officer, not by a supervisor, and are a routine narrative account of the officer's actions during a specific incident. Furthermore, these reports are not an assessment or evaluation of the police officer's performance or lack of performance, because they are created by the police officer himself or herself, and self evaluation is not what is contemplated by General Order 303. The fact that these reports are sometimes used by supervisors later on to evaluate a police officer's performance and in preparing their own incident reports does not transform the initial reports into evaluations or

job-performance records. *See* Op. Ark. Att'y Gen. No. 032 (2005).

We emphasize once more that this court has consistently held that it interprets exceptions to the FOIA narrowly and in favor of disclosure. *See, e.g., Fox v. Perroni, supra.* Ambiguous exemptions will be interpreted in a manner favoring disclosure. *See Ark. Dep't of Fin. & Admin. v. Pharmacy Assoc., Inc., supra.* A finding that these four use-of-force reports are not evaluation or job-performance records is consistent with the legislative intent behind this exemption. The General Assembly was clearly concerned with protecting both employees' privacy and the employee-evaluation process, with respect to the candor necessary for supervisory evaluations. As explained by Professors Watkins and Peltz, if such records detailing an employee's performance were routinely available to the public, supervisors charged with the duty of evaluating an employee's performance may not be candid in assessing this performance.

The employee-evaluation process is not disturbed by the release of the use-of-force reports at issue in the case before us. These reports are not written evaluations of the police officer's actions prepared by a supervisor; nor do they contain any notations or comments about the officer's conduct by the supervisor. Instead, each report merely contains the police officer's narrative account detailing his actions during a specific incident. And although these reports are prepared in accordance with General Order 303, and thus arguably created at the behest of the employer, they are *not* created as a part of an investigation of the police officer. Rather, the reports are routinely compiled by each police officer every time force is employed, and that officer's use-of-force may or may not result in an investigation and evaluation of the officer's actions. Stated another way, the report is prepared first and then an investigation *may or may not* come second. This is not a situation where an investigation had already begun and the police officer is directed to prepare a report detailing his actions with regard to a specific incident *as a result of that investigation.*

There is one final point. According to the testimony of Chief Thomas at the FOIA hearing, an internal-affairs investigation of Lieutenant Hudson and the Chris Erwin incident is ongoing.[5] He testified that at that time "the evaluations of the supervisors haven't been forwarded." He further admitted that not every use-of-force report results in an internal-affairs probe. Absent an investigation, Lieutenant Hudson's file "would have been brought up through the chain of command with evaluations," Thomas testified. He admitted that there are many more use-of-force reports in existence than investigated cases. It is telling to this court that in many cases a police officer's use-of-force report does not result in an investigation. In the instant case, there are four reports involving Lieutenant Hudson. It does not appear that all of these reports resulted in investigations.

Furthermore, according to Chief Thomas, once an internal-affairs investigation commences, the officers in the internal-affairs division "initiate a preliminary evaluation and then collect statements from witnesses, any physical evidence that might be there, videos from cars, equipment, radio transcripts, they attempt to locate ... whatever record might be appropriate." What the investigation uncov-

---

5. It is unclear from the record whether the internal-affairs investigation began as a result of a third-party complaint or was instituted internally within the Little Rock Police Department. Nor is it clear when the investigation began.

ers, and any reports generated by a supervisor as a result of that investigation evaluating the officer's performance and actions, no doubt, are exempt. But the initial narrative reports prepared by Lieutenant Hudson that he was required to make as part of the administrative routine under General Order 303 are not, as it is clear that the reports were not created as a result of a decision to investigate or evaluate the police officer. Moreover, the fact that an investigation later ensued does not transform the initial report into an exempt document. *See* John J. Watkins and Richard J. Peltz, *The Arkansas Freedom of Information Act,* 207 (Ark. Law Press, 5th ed.2009); Op. Ark. Att'y Gen. No. 032 (2005).

We hold, therefore, that the circuit court correctly found that these four use-of-force reports made by Lieutenant Hudson do not constitute employee-evaluation or job-performance records within the meaning of section 25–19–105(c)(1) and, thus, are subject to disclosure under the FOIA. Because we hold as we do regarding the release of those ⌊₁₆documents, it is unnecessary to address the remaining issues raised by Chief Thomas, including his challenge to the circuit court's finding that even if these reports are "employee evaluation or job performance records," they are subject to disclosure because Chief Thomas failed to show that any suspension or termination proceeding was underway.

Affirmed.

JIM HANNAH, Chief Justice, concurring.

I concur in the result reached by the majority; however, I write separately to state my analysis. The use-of-force narrative at issue is one of a number of items that constitutes a "Use–of–Force File," which must be created anytime an officer employs force "to control, arrest or prevent escape of any person." General Order 303(IV)(A). The Use–of–Force File is reviewed by the officer's supervisor, and then by successively higher supervisors. It is then referred to the Chief of Police where certain conditions exist, such as a "potential violation of Departmental policy" and where "counseling or other disciplinary action has been recommended." *See* General Order 303(IV)(B)(8). According to Chief of Police Stuart Thomas, the review of a Use–of–Force File may result in the initiation of an internal-affairs complaint, which would trigger an employee evaluation. The testimony and record on appeal reveal that the "Use of Force" process initiated and pursued under General Order 303 brings about a departmental review of the propriety of the use of force and may, incidentally, bring about an employee evaluation.

Nothing presented indicates that the creation of the Use-of Force file or its review constitutes an employee evaluation or generates job-performance records. As such, Use–of–Force₁₇ files are not exempt from disclosure. *See* Ark.Code Ann. § 25–19–105(c)(1) (Supp.2011).[1] "The burden of proving exemptions to the FOIA rests with

---

1. Arkansas Code Annotated section 25–19–105(c)(1) provides as follows:

   Notwithstanding subdivision (b)(12) of this section, all employee evaluation or job performance records, including preliminary notes and other materials, shall be open to public inspection only upon final administrative resolution of any suspension or termination proceeding at which the records form a basis for the decision to suspend or terminate the employee and if there is a compelling public interest in their disclosure.

   The General Assembly may wish to review the language in this section and consider whether its application to the facts in this case produces the result the General Assembly intended.

the keeper of the requested records claiming the exemption." *Orsini v. State,* 340 Ark. 665, 670–71, 13 S.W.3d 167, 170 (2000) (citing *Young v. Rice,* 308 Ark. 593, 826 S.W.2d 252 (1992)). Further, "[t]he FOIA should be broadly construed in favor of disclosure and exceptions construed narrowly." *Pulaski County v. Ark. Democrat–Gazette, Inc.,* 370 Ark. 435, 439, 260 S.W.3d 718, 721 (2007). Because the keeper of the requested records claiming the exemption failed to meet the burden of proof, I agree that the decision of the circuit court must be affirmed.