# In the Iowa Supreme Court

No. 24–0373

Submitted February 18, 2025—Filed March 14, 2025

**Harvey L. Harrison,**

Appellee,

vs.

**Lisa Mickey,** in her official capacity as Open Records Coordinator,
and **City of Des Moines, Iowa,**

Appellant.

Appeal from the Iowa District Court for Polk County, Coleman McAllister, judge.

A city appeals the district court's grant of summary judgment in an action brought by a citizen seeking access to police use of force reports under the Iowa Open Records Act. **Affirmed.**

Mansfield, J., delivered the opinion of the court, in which all participating justices joined. Waterman, J., took no part in the consideration or decision of the case.

Michelle Mackel-Wiederanders (argued), Assistant City Attorney, Des Moines, for appellants.

Gina Messamer (argued) and Kyle Dawson of Parrish Kruidenier, L.L.P., Des Moines, for appellee.

Brenna Bird, Attorney General, and Patrick C. Valencia, Deputy Solicitor General, for amicus curiae State of Iowa.

**Mansfield, Justice.**

### I. Introduction.

To preserve a zone of privacy for public employees, the Iowa Open Records Act (Act) exempts from disclosure "[p]ersonal information in confidential personnel records." Iowa Code § 22.7(11)(*a*) (2022). This case requires us to decide whether use of force reports—routinely prepared by police officers whenever they use force—are covered by this exemption. We conclude that they are not. They are reports of facts, not evaluations of employees. Accordingly, we affirm the judgment of the district court requiring disclosure of the City of Des Moines Police Department's use of force reports for 2020, subject to certain parameters noted herein.

### II. Facts and Procedural History.

**A. The Des Moines Police Department's Use of Force Reports.** The Des Moines Police Department requires a written report to be completed any time an officer uses force against a person. "Force" includes physical control techniques, pepper spray, physical striking, and the use of a baton or firearm.

The use of force report contains details about the incident. These include the date, time, and place of occurrence; the identity of the officer completing the report; a summary of the incident; the reason for using force; the service being rendered; weather conditions, light conditions, and the distance to the citizen; whether the citizen was injured, taken to the hospital, or arrested; the citizen's build and height; an assessment of whether the citizen was under the influence; and whether the officer was injured or taken to the hospital.

The City's policy is that use of force reports "shall be comprehensive and provide the degree of specificity necessary to fully document and evaluate the use of force." Moreover, the officer is instructed to address "[a]ny facts or

information learned by watching video of the encounter [or] speaking with witnesses."

Any use of force report goes to the officer's immediate supervisor, who reviews the report and any related video. If the supervisor detects a policy violation, the supervisor makes a recommendation. The matter then goes up the chain of command. A use of force report triggers an internal complaint only if someone in the review process ultimately decides that something went wrong. The reports are maintained in the office of professional standards and are not usually accessible even to police officers in the department.

According to the Des Moines chief of police, the primary purpose of use of force reports is to ensure accountability of the department's officers when they use force. But they are also used for training and other purposes. Every year, the department's office of professional standards conducts an annual analysis of use of force activities to identify trends or patterns and make recommendations.

**B. The 2020 Use of Force Report Summary.** The year 2020 was a significant one for the American justice system. On May 25, a Black man, George Floyd, was killed by Minneapolis police officers while being arrested. This sparked nationwide demonstrations and led to efforts by many police departments to reexamine their own use of force.

At some point after the end of the year, the policy manager for the Des Moines police department prepared a publicly available summary "Use of Force Report" for 2020.[1] This published report explained that changes had been made to the department's use of force policy in July 2020 and again in December 2020.

---

[1]According to police chief Dana Wingert, the department issues such a summary report every year.

These changes placed emphasis on de-escalation techniques and the use of less lethal force when objectively reasonable.

The 2020 summary report noted that over the entire year, there had been 282 incidents involving a Des Moines police officer's use of force against a citizen and 387 use of force reports submitted. This numerical discrepancy resulted from the fact that some incidents involved more than one officer's use of force. In addition, the summary report broke down the number of times each category of force was used.

Finally, the summary report stated that there had been eleven external and four internal complaints alleging an excessive use of force in 2020. Each of the four internal complaints was determined to be a violation of department policy that resulted in "reinstruction" or discipline.

On an annual basis, the Des Moines Police Department continues to this day to provide the public with similar summary reports on the use of force.

**C. Harvey Harrison's Open Records Request for Individual 2020 Use of Force Reports.** On March 7, 2022, Harvey Harrison submitted an open records request to the City's police department. Harrison is a retired attorney and founder of Just Voices, a nonprofit organization formed to document and fight racial disparities in Des Moines. According to Harrison, one of Just Voices' projects was to "evaluate how the DMPD uses physical and deadly force against residents of Des Moines in order to improve local police practices." Harrison has also been engaged in studying the police department's response to the 2020 George Floyd protests.

Harrison's request sought copies of the 387 use of force reports referenced in the 2020 summary report. The City initially objected on the ground that the reports had been prepared in anticipation of litigation and involved attorney work

product. Later, the City took the position that the reports were confidential as attorney work product and as investigative reports protected by Iowa Code section 22.7(5). Still later, the City took the position that they were confidential personnel records that are exempt from disclosure under sections 22.7(11) and 80F.1(20). Regardless, the reports were not produced.

**D. Harrison's Petition for Writ of Mandamus.** On October 12, Harrison filed an action for writ of mandamus in the Polk County District Court.[2] The petition sought an order compelling the disclosure of the 387 use of force reports and other relief. The City answered, asserting that the documents were "personnel documents" that are confidential and exempt from disclosure under Iowa Code sections 22.7(11) and 80F.1(20). The City did not contend, as it had previously, that the documents were confidential and exempt under section 22.7(5) or were subject to the attorney work product privilege.

Harrison moved for summary judgment, and the City resisted. Following a hearing, the district court granted Harrison's motion, reasoning as follows:

> While Harrison is not requesting the production of any documents related to the supervisor review and/or any discipline records, the City still contends that the officer's initial use of force report is an investigative document[] because the City categorizes the police officer's use of force report as a form of "self-review." Because each officer's use of force report is evaluated by the officer's supervisors for accountability for policy failures, which may include imposing discipline on the officer, the City argues that each officer's use of force report is confidential as it is the functional equivalent to an in-house job performance record or a disciplinary investigative report.

---

[2]The petition named as defendants both the City itself and Lisa Mickey in her official capacity as open records coordinator for the City. *See* Iowa Code § 22.10(1) ("Any aggrieved person, any taxpayer to or citizen of the state of Iowa, or the attorney general or any county attorney, may seek judicial enforcement of the requirements of this chapter in an action brought against the lawful custodian and any other persons who would be appropriate defendants under the circumstances."). We shall refer to them collectively as "the City."

Harrison disagrees with the City's characterization of the use of force report as a "self-review" by the officer or an in-house job performance record. Harrison notes that use of force reports are separate and distinct from complaints of administrative reviews of an officer's conduct each of which trigger the creation of a disciplinary case. In other words, not every use of force report triggers a disciplinary case against the officer. Finally, Harrison contends that if the Court accepts the City's logic, then conceivably any report drafted by a police officer could be exempt from disclosure because it is a form of self-review or self-evaluation or which, upon review by a supervisor, might subject the officer to discipline.

The Court concludes that Harrison's argument is more persuasive than the position taken by the City. The Court reaches this conclusion in part by reviewing the sample use of force report. It is clear that an officer who fills out the report is primarily limited to reporting the basic facts of what happened during the use of force incident such as: what happened; who was involved, when the incident occurred; where the incident took place; and why the officer used force.

Consequently, according to the report's express terms, an officer is not required to set forth what could have been done differently or what was done correctly or incorrectly. The officer is also not asked to review, assess, or otherwise justify his or her job performance in any way. In sum, the Court does not conclude that the use of force reports are akin to in-house job performance records or disciplinary records that fall within the category of documents that are exempt from disclosure under § 22.7(11).

The court further noted that in 2020, only 4 out of the 387 use of force reports resulted in internal disciplinary complaints. The court did indicate that any information about whether the officer was injured or received medical treatment as a result of the use of force incident could be redacted. Additionally, the district court rejected the City's alternative argument that section 80F.1(20) allowed it to withhold the use of force reports. Finally, the district court briefly addressed section 22.7(5) and found that the City had presented no "facts or evidence" to justify withholding use of force reports on that ground.

The City appealed, and we retained the appeal.

**III. Standard of Review.**

"We review the district court's interpretation of chapter 22 for correction of errors at law." *Mitchell v. City of Cedar Rapids*, 926 N.W.2d 222, 228 (Iowa 2019) (quoting *Iowa Film Prod. Servs. v. Iowa Dep't of Econ. Dev.*, 818 N.W.2d 207, 217 (Iowa 2012)). Additionally, "when a ruling under the Act involves summary judgment, our review is for correction of errors at law." *ACLU Found. of Iowa, Inc. v. Recs. Custodian, Atl. Cmty. Sch. Dist.*, 818 N.W.2d 231, 232 (Iowa 2012).

**IV. Legal Analysis.**

**A. The Iowa Open Records Act and Its Section 22.7(11) Exemption.** The use of force reports are "public records" under the Act. *See* Iowa Code § 22.1(3)(*a*) (defining "public records"). Section 22.2(1) of the Act states that "[e]very person shall have the right to examine and copy a public record and to publish or otherwise disseminate a public record or the information contained in a public record." *Id.* § 22.2(1).

The Act "embodies 'a liberal policy in favor of access to public records.' " *Milligan v. Ottumwa Police Dep't*, 937 N.W.2d 97, 102 (Iowa 2020) (quoting *Mitchell*, 926 N.W.2d at 229). We have noted that "the core purpose of the freedom of information statutes [is] to enlighten the public about the operation or activities of the government." *Clymer v. City of Cedar Rapids*, 601 N.W.2d 42, 47 (Iowa 1999). "The Open Records Act doesn't exist just to uncover fraudulent or illegal conduct, but also to bring to light the need for *different* laws and policies." *Ripperger v. Iowa Pub. Info. Bd.*, 967 N.W.2d 540, 557 (Iowa 2021) (Mansfield, J., concurring in part and dissenting in part).

Yet section 22.7 sets forth a number of exceptions to the Act's rule of mandatory disclosure. In 2022, when Harrison submitted his open records

request and filed suit, there were seventy-four such exceptions. *See* Iowa Code § 22.7(1)–(74). Records covered by an exemption "shall be kept confidential, unless otherwise ordered by a court, by the lawful custodian of the records, or by another person duly authorized to release such information." *Id.*

The City relies on only one of those seventy-four exemptions: Iowa Code section 22.7(11). That provision exempts from mandatory disclosure "[p]ersonal information in confidential personnel records of government bodies relating to identified or identifiable individuals who are officials, officers, or employees of the government bodies." *Id.* § 22.7(11)(*a*).

We have previously decided several cases interpreting the section 22.7(11) exemption. The landmark case was *Des Moines Independent Community School District Public Records v. Des Moines Register & Tribune Co.*, 487 N.W.2d 666 (Iowa 1992). There, a newspaper sought documents relating to investigations conducted by a school district relating to a school principal. *Id.* at 668. We noted that the bulk of the documents focused on the job performance of either the principal or other employees that the principal had complained about. *Id.* at 670. We held that "the statute renders these essentially in-house, job performance documents exempt from disclosure" and that they "fell within the category of personal information in personnel records." *Id.* We added that "[i]t does not detract from this qualification that the documents were deposited in investigation files. The nature of the record is not controlled by its place in a filing system." *Id.*

Four years later, we decided *DeLaMater v. Marion Civil Service Commission*, 554 N.W.2d 875 (Iowa 1996). There, a police officer who suspected he had been unfairly passed over for promotion sought the raw scores of each person who had taken the civil service exam for that job. *Id.* at 877. We distinguished the

*Des Moines Independent Community School District* case as involving "evaluations of job performance." *Id.* at 879. We applied a balancing approach. *Id.* at 880–81. We concluded that the raw scores of the test-takers were not shielded by section 22.7(11), but that their corresponding identities were. *Id.*

Then, in *Clymer v. City of Cedar Rapids*, we again split the baby, ruling that a newspaper was entitled to obtain records showing the salary, sick leave, and vacation received by individual city employees, but not their birthdates, gender, and addresses. 601 N.W.2d at 48. Applying a balancing test, we explained,

> [T]he compensation allocated to—and used by—individual public employees, whether for salary, sick leave or vacation, is a matter of legitimate concern to the public. So long as the information disclosed does not reveal personal medical conditions or professional evaluations, the public has the right to examine it.

*Id.* On the other hand, regarding birthdate, gender, and address, we concluded that the newspaper's "expressed need to 'avoid confusion and verify identification' fails to outweigh the safety and security issues implicated by the revelation of these personal details." *Id.*

More recently, in *ACLU Foundation of Iowa, Inc. v. Records Custodian, Atlantic Community School District*, we reviewed an open records request for the discipline imposed on two school employees for conducting a strip search of five female students after another student reported lost money. 818 N.W.2d at 232. The school district had announced publicly that the two employees would be disciplined. *Id.* Nevertheless, we concluded that disciplinary records and other information regarding discipline were covered by the section 22.7(11) exemption. *Id.* at 235–36. We said that no balancing test was needed because the records were "nothing more than in-house job performance records or information." *Id.* at 235.

**B. Applying the Section 22.7(11) Exemption Here.** In this case, we think the district court got it right. The use of force reports are what they say they are: reports of the department's use of force. While these reports are reviewed by superiors and led to discipline in around 1% of cases in 2020, they are not themselves evaluative or performance records. They thus do not resemble the in-house investigations of complaints about certain personnel in *Des Moines Independent Community School District*, the individualized test scores in *DeLaMater*, or the disciplinary records in *ACLU Foundation of Iowa*. They are factual reports concerning events, not "confidential personnel records." Iowa Code § 22.7(11)(*a*).[3]

The City characterizes the use of force reports as an example of "self-review." Like the district court, we are not persuaded by this characterization. It appears that any review and evaluation occur *later*; the officer's job is to disclose what happened. Also, the reports are concededly used for other purposes as well, such as "to identify trends and patterns."

The police department's use of force policy states, "All uses of force shall be documented and reviewed pursuant to department policies." It does not say that the use of force should be reviewed *and then* documented. In addition, the police department use of force reporting policy states that "[w]hen possible," the officer should submit the report "before they end their tour of duty." If the report were intended to be truly self-evaluative, one would not expect the officer to have to complete it before the end of their shift.

---

[3]Additionally, the use of force reports generally do not contain personal details about the officers involved. *Cf. Clymer*, 601 N.W.2d at 48. There is a place on the form to note officer injuries or whether an officer went to the hospital, but the district court ruled that the City could redact that information.

The City also highlights that it stores the use of force reports in a separate confidential file where they can be accessed only by a limited number of persons within the police department. They are not maintained in the regular records management system. But the classification of a record for purposes of the Act "is not controlled by its place in a filing system." *Des Moines Indep. Cmty. Sch. Dist.*, 487 N.W.2d at 670. Notably, use of force reports are not typically kept within individual officer personnel files.

The district court further noted that courts in several other states have concluded that use of force reports are not exempt from disclosure under their respective open records laws. In *City of San Antonio v. San Antonio Express–News*, the Texas Court of Appeals concluded that the requested use of force reports should be produced and could not be withheld as personnel records. 47 S.W.3d 556, 564–65 (Tex. Ct. App. 2000). Although the reports were routed to and maintained by the professional standards section of the police department, whose role was to investigate incidents involving the use of force, the reports were "administrative in nature" and were used by the department to track use of force. *Id.* at 561, 564–65.

Similarly, in *Prisoners' Legal Services of New York v. New York State Department of Corrections & Community Supervision*, the New York Appellate Division held that use of force reports in a correctional facility did not qualify as personnel records and were subject to disclosure. 98 N.Y.S.3d 677, 682 (App. Div. 2019). As the court explained,

> [E]ach category of report is, at its core, a written memorialization of an event that occurred at a DOCCS facility. Additionally, and significantly, each type of report is authored, as a mandatory component of their job duties, by staff members with knowledge of the underlying event. The reports do not arise out of inmate allegations or grievances. Nor are they written documentation of

disciplinary proceedings or disciplinary action taken against a correction officer.

*Id.* at 680–81 (citations omitted).

Likewise, in *State ex rel. Journal/Sentinel, Inc. v. Arreola*, the Wisconsin Court of Appeals concluded that use of deadly force reports should be produced under that state's open records law, with redactions allowed for supervisory calculations, recommendations, or other comments regarding disciplinary actions and police officers' home addresses. 558 N.W.2d 670, 679 (Wis. Ct. App. 1996). The court disagreed with the city's contention that the reports were the type of personnel record that should not be produced. *Id.* at 675–76. The "[f]actual material" in the reports was subject to disclosure. *Id.* at 677.

Finally, in *Thomas v. Hall*, the Arkansas Supreme Court found that use of force reports did not constitute employee evaluation or job performance records that were exempt from disclosure under the state's freedom of information act. 399 S.W.3d 387, 396 (Ark. 2012). As noted by the court, "[I]t is clear that the reports were not created as a result of a decision to investigate or evaluate the police officer. Moreover, the fact that an investigation later ensued does not transform the initial report into an exempt document." *Id.* The court added,

> These reports are created by the police officer, not by a supervisor, and are a routine narrative account of the officer's actions during a specific incident. . . . [T]hese reports are not an assessment or evaluation of the police officer's performance or lack of performance . . . . The fact that these reports are sometimes used by supervisors later on to evaluate a police officer's performance . . . does not transform the initial reports into evaluations or job-performance records.

*Id.* at 394–95.

The City argues at some length that these four cases are not on point. Specifically, the City insists that the other four jurisdictions have different types of open records laws, different types of use of force reports, or both. But the City

cites no authority coming out the other way, and at a minimum, these cases show that several other jurisdictions view use of force reports as primarily factual and do not equate them to confidential personnel records.

The State of Iowa has filed an amicus brief in partial support of the City. Unlike the City, the State accepts that Iowa Code section 22.7(11) is generally not a barrier to disclosure of use of force reports. However, the State expresses concern that the district court ordered the City to produce records that Harrison didn't ask for, "including information about supervisors' impressions and analysis of the use of force."

We don't share the State's concern. Harrison made it very clear he was not seeking any parts of the use of force report not completed by the line officer. In his motion for summary judgment, he disclaimed any interest in "information about [chain of command] review and ultimate assessment." Again, in his summary judgment reply, he reiterated that he "has not requested any information regarding supervisory review or discipline." We read the district court's order as confined to what the plaintiff was asking for. Thus, as the district court indicated in the first sentence of its ruling, what is at issue are "use of force reports *authored by* Des Moines Police Department officers," not subsequent entries made by their supervisors. (Emphasis added.) The district court's ruling and today's opinion obligate the City to produce each report as initially completed by the officer, not anything added later as part of a chain of command review.

Accordingly, we conclude the district court correctly ruled that Iowa Code section 22.7(11) does not exempt the use of force reports from disclosure.

**C. Iowa Code Section 80F.1(20).** In opposing disclosure of the use of force reports, the City also relies on Iowa Code section 80F.1, which is titled

"Peace officer, public safety, and emergency personnel bill of rights." In particular, the City points out that section 80F.1(20) provides, "The employing agency shall keep an officer's statement, recordings, or transcripts of any interviews or disciplinary proceedings, and any complaints made against an officer confidential unless otherwise provided by law or with the officer's written consent." *Id.* § 80F.1(20).

We agree with the district court that section 80F.1(20) has no bearing here. Significantly, section 80F.1 defines "statement" to mean "the statement of the officer who is the subject of an allegation in response to a complaint." *Id.* § 80F.1(1)(*f*). And it defines "interview" to mean "the questioning of an officer who is the subject of a complaint pursuant to the formal administrative investigation procedures of the investigating agency." *Id.* § 80F.1(1)(*d*). These definitions make clear that the terms "statement" and "interview" for chapter 80F purposes are terms of art. Accordingly, section 80F.1(20) has nothing to say about use of force reports that are not prepared in response to an allegation or a complaint but instead are routinely generated whenever an officer happens to have used force.

**D. Other Arguments.** The City also asks that if we affirm the district court, there may be some "fact-intensive" situations where particular use of force reports should be withheld under another provision of Iowa Code section 22.7 or under some other provision of law. The City gives three possible examples: (1) an open and active investigation, (2) a situation where disclosure would pose a clear and present danger, or (3) a report involving a juvenile.

Examples #1 and #2 appear to be an attempt by the City to resurrect its original objection under Iowa Code section 22.7(5).[4] The district court found that

---

[4]Iowa Code section 22.7(5) provides an exemption for

Peace officers' investigative reports, privileged records or information specified in section 80G.2, and specific portions of electronic mail and telephone billing

any argument under that section had been waived. As the district court put it, "[T]he City has presented no facts or evidence to support the conclusion that disclosure of any single use of force report would jeopardize any investigation or pose any clear and present danger to anyone's safety." In other words, the City had ample opportunity to raise its factual arguments under section 22.7(5) with respect to particular reports below and failed to do so. The district court labeled the City's argument as "nothing more than the bold assertion that this subsection may apply." We find that the City's section 22.7(5) argument is no more substantial here. We reject it for the same reasons.

In any event, the City appears to accept that as a general matter, use of force reports do not go beyond "the date, time, specific location, and immediate facts and circumstances surrounding a crime or incident"—information that is not protected by section 22.7(5). *Id.*; *see also Mitchell*, 926 N.W.2d at 225 (affirming a district court order requiring all law enforcement reports prepared within ninety-six hours of the incident to be made publicly available without a protective order). Furthermore, any such reports are now at least four years old. It is difficult to see how their production would jeopardize an ongoing investigation or present a clear and present danger.

We now turn to the argument that production of an unredacted report might violate a law protecting the rights of a juvenile. We do not foreclose the possibility that a redaction from a use of force report might be justified on this ground or some other ground we have not discussed. Once again, though, we

---

records of law enforcement agencies if that information is part of an ongoing investigation, except where disclosure is authorized elsewhere in this Code. However, the date, time, specific location, and immediate facts and circumstances surrounding a crime or incident shall not be kept confidential under this section, except in those unusual circumstances where disclosure would plainly and seriously jeopardize an investigation or pose a clear and present danger to the safety of an individual.

emphasize that our decision resolves the issues under Iowa Code sections 22.7(11), 80F.1, and 22.7(5) and the overall question of whether Harrison is entitled to use of force reports for 2020.[5]

### V. Conclusion.

For the foregoing reasons, we hold that the use of reports for 2020 should be produced, subject to the qualifications discussed above. We affirm the judgment of the district court.

**Affirmed.**

All justices concur except Waterman, J., who takes no part.

---

[5]The State as amicus goes further than the City under section 22.7(5). That is, it asks us "alternatively" to remand to the district court so it can conduct a balancing under Iowa Code section 22.7(5) before ordering the use of force reports to be produced. There are several problems with the State's request.

First, the State is only an amicus, not a party, and we do not normally allow amici to raise grounds for reversal not raised by the parties themselves. *See Iowa Ass'n of Bus. & Indus. v. City of Waterloo*, 961 N.W.2d 465, 476 (Iowa 2021). The City is only asking for the opportunity to raise "fact-intensive" arguments with respect to specific reports, not the wholesale balancing that the State seeks.

Second, as we have noted, the district court has already determined that the section 22.7(5) arguments have been waived. An amicus does not get to revive waived arguments. *See Mueller v. St. Ansgar State Bank*, 465 N.W.2d 659, 660 (Iowa 1991).

Third, the State fails to make a prima facie showing that the use of force reports contain any category of information shielded by section 22.7(5). Although the State, like us, has access to the form of report used by the City, the State does not identify any category on the form that goes beyond "the date, time, specific location, and immediate facts and circumstances surrounding a crime or incident"—which, as already noted, is information not protected by section 22.7(5). Iowa Code § 22.7(5).