STATE OF MAINE
CUMBERLAND, ss

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-19-39

SUSAN HAWES,

      Plaintiff

v.

      ORDER

CUMBERLAND COUNTY SHERIFF'S
OFFICE,

      Defendant

In this case, much delayed by the pandemic, the court held a hearing on November 18, 2021 to address Counts 4, 5, and 6 of plaintiff Susan Hawes's second amended complaint.[1] After the hearing the parties were allowed until December 6 to submit any additional legal argument. Ms. Hawes submitted a memorandum of law on December 6. Counsel for the Cumberland County Sheriff's Office did not submit an additional memorandum.

Count Four

The evidence offered at the hearing with respect to Count 4 demonstrated that the records that were the focus of the request by Ms. Hawes – reflecting the amount of forced overtime – are kept by the union rather than by the Sheriff's Office or by the county.[2] Accordingly, Ms. Hawes is not entitled to relief on Count 4.

---

[1] Counts 1, 2, and 3 of Ms. Hawes's complaint have previously been addressed.

[2] As Ms. Hawes noted at the hearing, it would have saved everyone time if that had been explained to Ms. Hawes at an earlier point.

<u>Counts Five and Six</u>

<u>(a) Subject matter jurisdiction</u>

At the outset of the hearing, counsel for defendant raised an objection to Counts 5 and 6 on grounds on subject matter jurisdiction. The court had not previously granted Ms. Hawes leave to amend to assert Counts 5 and 6. The defendant did not initially object to the addition of the additional counts but instead simply filed a response to the second amended complaint. It did, however, raise subject matter jurisdiction as an affirmative defense and renewed that defense at the hearing.

Under the circumstances of this case, the court concludes that subject matter jurisdiction exists. Ms. Hawes filed her second amended complaint on April 14, 2021. Count 5 related to an FOAA request she had submitted on March 19. Count 6 related to an FOAA request she had submitted on March 15. The Sheriff's Office did not deny her requests. It provided records in response to those requests on April 1 and 2 – although Ms. Hawes contends the records provided did not comply with the FOAA. The Sheriff's office contends it complied with her requests and with the statute.

The FOAA provides that a person aggrieved by an agency's refusal, denial, or failure to allow inspection and copying may appeal within 30 calendar days. 1 M.R.S § 409(1). In a case where records are provided but the requester contends that the response failed to comply with the FOAA, the court would interpret the 30 days as running from the allegedly non-compliant response. In any event, the second amended complaint in this case was filed within 30 calendar days of Ms. Hawes's March 15 and 19 requests and within 14 days of the response that Ms. Hawes contends failed to comply with the FOAA. This was timely under 1 M.R.S. § 409(1).

2

In the court's view, the 30 day deadline goes to timeliness and a failure to meet that deadline does not deprive the court of subject matter jurisdiction. Even if that is incorrect, Ms. Hawes met the 30 day deadline. If she had filed a new FOAA complaint on April 14, 2021, that would have been timely. Where this action was already pending, the issue reduces to whether Ms. Hawes was required to pay a second filing fee to file a new complaint.[3] Freedom of Access litigation should not turn on such technicalities, particularly in light of the statutory provision that FOAA appeals may be advanced on the docket and receive priority when the court determines that the interests of justice so require. Moreover, leave to amend shall be freely given when justice so requires. The court will allow the amendment to add Counts 5 and 6 and will consider those counts.

(b) Redaction of payroll codes

With respect to the requests that are the subject of Counts 5 and 6, the information sought is contained in data files maintained by Cumberland County. The Sheriff's Office does not itself maintain records with the information requested, and the records produced to Ms. Hawes therefore came from the County.

On Count 5 Ms. Hawes received records with the pay codes redacted. The basis for this redaction is that disclosure of pay codes might reveal the payment of sick pay. The only justification for such a redaction, as far as the court is aware, would be 30-A M.R.S. §

---

[3] Another issue, lurking in the background, is whether, if Ms. Hawes had missed the 30-day deadline, she would have been precluded from refiling the same request and bringing a new appeal. Counsel for the Sheriff's Office suggested at the hearing that she would have been precluded. The court does not need to reach this issue but is inclined to disagree. To preclude a second request for the same records if the 30 day deadline is missed would infuse the Freedom of Access statute with a trap for the unwary. This is particularly true in a case where a requester receives records but discovers potential omissions in the agency's response after the fact. Moreover, if this were the rule, a requester could simply reframe the request more broadly or in different language.

503(1)(B)(1), which exempts "county records containing . . . [m]edical information of any kind, including information pertaining to the diagnosis or treatment of mental or emotional disorders."

The question is whether the fact that an employee received sick pay constitutes "medical information of any kind." Following the principle that FOAA exemptions shall be strictly construed, *see, e.g., Citizens Communication Co. v. Attorney General,* 2007 ME 114 ¶ 9, 931 A.2d 503, the court concludes that the exemption for medical information should be limited to any information relating to symptoms, illnesses, diagnoses, and treatment including, as the statute expressly provides, any information relating to mental or emotional disorders. Just because an employee receives sick pay, however, does not constitute confidential medical information. This is consistent with precedent in other states. *See Clymer v. City of Cedar Rapids,* 601 N.W. 2d 42, 46, 48 (Iowa 1999) and cases cited therein.

(c) Disabled Spreadsheets

In the records produced that are the subject of Counts 5 and 6, the Sheriff's Office produced records in spreadsheet form that were "locked." This was done after the data requested was obtained from the county's data file and placed on spreadsheets. The Sheriff's Office thereafter locked the spreadsheets before producing them to Ms. Hawes. If the spreadsheets had been produced in an unlocked form, Ms. Hawes could have used the spreadsheets, for example, to total various columns and could have cut and pasted data from the spreadsheets. In locked form, she may have been able to reorganize the data (e.g., from lowest to highest) to a very limited extent but she could not have performed any other operations or functions.

The defense witnesses at the hearing testified that they had just begun locking spreadsheets in early 2021 and that this was done for security reasons. They stated that they would lock

4

spreadsheets in response to other requests, but it did not appear that any spreadsheets other than the ones requested by Ms. Hawes had yet been locked.

Whether locking a spreadsheet complies with the FOAA requires interpretation of two provisions in the statute. "Public records" are defined to include "any electronic data compilation from which information may be obtained." 1 M.R.S. § 402(3). In addition, 1 M.R.S. § 408-A)(7) provides as follows:

> **Electronically stored information.** An agency or official having custody or control of records subject to a request under this section shall provide access to an electronically stored public record either as a printed document or <u>in the medium in which the record is stored, at the requester's option,</u> except that the agency or official is not required to provide access to an electronically stored public record <u>as a computer file</u> if the agency or official does not have the ability to separate or prevent the disclosure of confidential information contained in or associated with that file.

(emphasis added). The Sheriff's Office does not contend that it does not have the ability to separate out confidential information in this case.

Accordingly, the issue presented is whether electronically stored information must be produced in an unlocked spreadsheet – i.e., in a functional form that would allow the recipient, if he or she chooses, to extract and sort the data and to perform the various operations and functions that could ordinarily be performed in using a spreadsheet.

The court has not found any precedent on this issue. However, it concludes that Ms. Hawes is entitled to unlocked spreadsheets for three reasons. First, the FOAA is to be liberally construed in favor of disclosure. *Citizens Communication Co. v. Attorney General*, 2007 ME 114 ¶ 9. Second, the statutory language favors this result. The "medium in which the record [sought by Ms. Hawes] is stored," as set forth in 1 M.R.S. § 408-A(7), is in a functional data file which can be sorted and manipulated, not in a data file that is locked. Section 408-A(7) further states that the agency does not have to provide access to an electronically stored record "as a computer file" if the agency cannot separate confidential information. That indicates that when the agency can separate out confidential information, it has to provide the public record information "as a computer file."

5

Providing the data in a locked or crippled computer file does not accord with the statutory obligation.

Third, the security justification provided by the Sheriff's Office is unconvincing. The ability of unauthorized persons to hack into the computer files of public agencies and private companies is a serious problem. However, the locking of records provided to Ms. Hawes does not afford the Sheriff's Office any security against hacking. All it does is to secure the data from being fully utilized by Ms. Hawes. The Sheriff's Office may be concerned about misuse of the data by Ms. Hawes or another requester; Ms. Hawes could, for example, replace some of the entries on the spreadsheet with new values. But the Sheriff's Office can protect itself against any alteration of data by making and preserving an exact digital copy of any public record provided to Ms. Hawes or another requester. It would then be able to determine if any data has been altered.

The FOAA is designed to allow citizens to inspect and copy public records and to obtain copies of electronically stored data in the form of computer files. Non-disclosure of electronically stored records cannot be justified on the basis that the data may be misused any more than non-disclosure of public records kept on paper could be justified on the ground that paper documents might be altered and recopied or that portions of those documents might be quoted out of context.

Accordingly, the Sheriff's Office is ordered to produce the payroll records without redactions for pay code and is ordered to produce the spreadsheets previously provided in an unlocked format.

For the reasons stated at the hearing the court has already determined that Ms. Hawes is a prevailing party entitled to an award of costs, including her filing fee, from the Sheriff's office. The relief awarded in this order further supports that conclusion. If Ms. Hawes seeks an award of any costs other than her filing fee, she shall submit a bill of costs within 10 days. Otherwise she court shall simply award her costs equaling $ 175 (filing fee) and $5 (service form).[4]

The FOAA can be interpreted to suggest that litigation costs can only be awarded if a failure or refusal to provide public records was committed in bad faith. *See* 1 M.R.S. § 409(4). It is unclear if this means that the costs ordinarily available to a prevailing party under Rule 54(d) are not available in FOAA cases absent bad faith. If so, the court finds that there is sufficient evidence of

---

[4] The FOAA has a provision for attorney's fees but the court adheres to the view that parties appearing pro se are not entitled to attorney's fees, and Ms. Hawes is not seeking attorney's fees. Recoverable costs are set forth in 14 M.R.S. §§ 1502-B and 1502-C and in M.R.Civ.P. 54(f) and (g). The court is not aware that Ms. Hawes incurred any fees for effecting service, for subpoenaing witnesses, or for depositions.

bad faith to justify at least an award of the filing fees paid by Ms. Hawes. This is demonstrated by the initial invocation by the Sheriff's Office of 16 M.R.S. § 804(7) – which relates to the confidentiality of records that would disclose "investigative techniques or security plans" – in response to the FOAA request by Ms. Hawes that triggered this action. Subsequently the Sheriff's Office also invoked 16 M.R.S. § 804(8) (information that would endanger the life or physical safety of law enforcement personnel) and compounded what the court can only describe as stonewalling by the invocation of 14 M.R.S. § 807 (which provides that a criminal justice agency may not confirm the existence or nonexistence if investigative record information). See order dated March 2, 2020 at ¶¶ 5-7. As far as the court can tell, Ms. Hawes would not have received any records in response to her initial request if she had not filed this action.

Since the response to the initial request, the court would not necessarily be prepared to find that the Sheriff's Office and the County have been acting in bad faith. However, they have been very grudging, to say the least, in responding to Ms. Hawes's requests. It is, for example, unclear whether any other requester has received or would receive disabled spreadsheets.

As noted in its February 4, 2021 order, the court understands that there has been a longstanding adversarial relationship between Ms. Hawes and both the Sheriff's Office and the County. Ms. Hawes has apparently frequently appeared at meetings of the County Commissioners and perhaps on other occasions to criticize, in particular, the forced overtime policies at the jail. County officials may have lost patience with Ms. Hawes and believe that her criticisms are not valid and her persistence is not productive. Nevertheless the FOAA exists to guarantee access to public records by all citizens, including persistent critics who seek to hold governmental agencies to account and regardless of whether the agencies consider their criticisms to be valid or their efforts to be productive.

The entry shall be:

1. Defendant Cumberland County Sheriff's Office is ordered to provide to plaintiff Susan Hawes the payroll records sought in her March 19, 2021 request without redactions of the pay codes.

2. Defendant Cumberland County Sheriff's Office is ordered to provide to plaintiff Susan Hawes the records sought in her March 15 and 19, 2021 requests in an unlocked spreadsheet format.

7

3. Ms. Hawes is entitled to an award of costs.

4. The clerk shall incorporate this order in the docket by reference pursuant to Rule 79(a).

Dated: January 3, 2022

_____
Thomas D. Warren
Justice, Superior Court

REC'D CUMB CLERKS OF
JAN 3 '22 PM1:21

Entered on the Docket: 01/03/22

Plaintiff-Susan Hawes Pro Se
Defendant-Michael Devine, Esq. and
Trevor Savage, Esq.

STATE OF MAINE
CUMBERLAND, ss

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-19-39

SUSAN HAWES,

      Plaintiff

v.

                  ORDER

RECEIVED CUMB. CLERK'S OFF
JUN 15 '21 AM8:15

CUMBERLAND COUNTY SHERIFF'S
OFFICE,

      Defendant

In response to the court's order dated March 15, 2021 plaintiff Susan Hawes filed on April 14, 2021 a second amended complaint including as Count Four a claim that she did not receive all of the records covered by a request made on January 21, 2021.[1] She also added two additional FOAA claims as Counts Five and Six.

In Count Four Ms. Hawes states that she understood there were 60+ pages responsive to her January 21, 2021 request but that, as of April 13, 2021 only 49 pages had been received.

Count Five seeks relief based on a request she made on March 19, 2021 for a standard excel spreadsheet of regular, overtime, and all other pay types paid to each jail employee for the years 2018 to present. She alleges that pay codes were wrongfully redacted and that the spreadsheet was produced in a non-functional form.

Count Six relates to her January 21 request for overtime records relating to the period from December 22, 2020 to January 21, 2021. However, the request annexed to the Second Amended complaint as Exhibit E and referred to in Count Six is dated March 15, 2021, not January 21, 2021.

---

[1] Ms. Hawes was granted leave to amend to add count Four in the court's March 15 order.

In Count Six, as in Count Five, Ms. Hawes alleges that pay codes were wrongfully redacted and that the spreadsheet was produced in a non-functional form.

Ms. Hawes had not been granted leave to amend to add Counts Five and Six. However, the Sheriff's Office did not object to those additional amendments but simply filed an answer to her Second Amended Complaint.

The court orders as follows:

1. As set forth below, the court will consider whether Ms. Hawes may proceed on Counts Five and Six, but apart from that there shall be no further amendments to the complaint. The court only allowed Ms. Hawes to add Count IV because it reiterated the request made in count I for a different time period. The court does not have – and does not intend to exercise – continuing jurisdiction over all of Ms. Hawes's current and future FOAA requests.

2. The court will schedule one further hearing at which the parties shall be prepared to address the following:

> (1) Ms. Hawes's claim in Count Four that she only received 49 of the 60+ documents requested;
>
> (2) whether Ms. Hawes shall be permitted to proceed on Counts Five and Six;
>
> (3) if so, whether the Sheriff's Office is entitled to redact pay codes and to contend that the basis of the redaction is confidential;
>
> (4) if so, whether the Sheriff's Office has produced spreadsheets in a non-functional form;
>
> (5) if so, whether the production of spreadsheets in a non-functional form violates 1 M.R.S. § 408-A(7).

3. If the Sheriff's Office needs witnesses in order to address (3) and (4) above, those witnesses shall be available at the hearing because the burden of persuasion in FOAA cases is on the agency. *Dubois v. Department of Agriculture*, 2018 ME 68 ¶ 15, 185 A.3d 743.

2

The entry shall be:

Procedural order issued. The clerk shall incorporate this order in the docket by reference pursuant to Rule 79(a).

Dated: June _14_, 2021

_____
Thomas D. Warren
Justice, Superior Court

**Plaintiff Hawes-Pro Se**
**Defendant CCSO-Michael Devine, Esq.**

3

STATE OF MAINE
CUMBERLAND, ss

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-19-39

SUSAN HAWES,

Plaintiff

v.

ORDER

CUMBERLAND COUNTY SHERIFF'S
OFFICE,

Defendant

A hearing was held on December 21, 2020 on plaintiff's action under the Freedom of Access Act to obtain certain overtime records relating to officers at the Cumberland County Jail.[1]

Ms. Hawes has three counts in her amended FOAA complaint, but Count II has previously been resolved.

Count I of the amended complaint seeks specific overtime records for the month of July 2019, requested in an email from Ms. Hawes dated November 17, 2019. In prior proceedings Ms. Hawes specified that she understood that the specific records in question had been kept in several binders.

The initial response of the Sheriff's Office was that the records were confidential pursuant to 16 M.R.S. § 804(7). In its answer to the amended complaint the Sheriff's Office also asserted 16 M.R.S. § 804(8).[2] As the case progressed, however, it appeared that the confidentiality concerns

---

[1] This case was about to be scheduled for a hearing when court proceedings were curtailed in March 2020. Since then there has been almost no time in Cumberland for Superior Court civil proceedings due to the pandemic and the need to focus on criminal cases.

[2] 16 M.R.S § 804(7) protects "intelligence and investigative record information," as defined in 16 M.R.S. § 803(7), that would "disclose investigative techniques and procedures or security plans and procedures not

of the Sheriff's office related only to any telephone numbers that might be contained on the records, and Ms. Hawes stated that she was willing to allow any telephone numbers to be redacted. The Sheriff's Office thereafter reported that it could not locate any of the binders referred to by Ms. Hawes or the July 2019 overtime records that had allegedly been kept in those binders.

However, at the outset of the December 21, 2020 hearing counsel for the Sheriff's office reported that certain documents responsive to Count I had recently been discovered and produced to Ms. Hawes and that a further search was underway for further documents that were also believed to exist.

Ms. Hawes offered evidence through Thomas Wiley, a retired employee of the Cumberland Sheriff's Office, which established that overtime records had been maintained during his tenure listing the employees working overtime for every shift and any so-called forced overtime. Those records were kept in five three-ring binders. As time went on, records relating to past months were removed from the binders and were stored in a room near the Lieutenant's office.

One or more of the records recently produced to Ms. Hawes came from those binders (Exhibit 3). The parties agreed that before Count I could proceed to a conclusion, the Sheriff's office needed to continue to search for the remaining records responsive to Count I that were believed to exist.

The remainder of the hearing addressed Count III of the complaint, which involved Ms. Hawes's request as set forth in a November 24, 2019 email for the following:

> a current 2019 Jail Active Roster, including vacant positions, with the standard roster columns: Employee Number / Last Name / First Name / Job Class / Job Class Description / Position / Pay Type / Pay Type Description / Position Description /Location / Group / Bargaining Unit.

known by the general public." Section 804(8) protects intelligence and investigative record information that would "endanger the life or physical safety of any individual, including law enforcement personnel."

2

The Sheriff's Office maintained that it had complied with this request by producing the information sought in the form of a Microsoft Excel worksheet which in .pdf format amounted to approximately 321 pages listing each employee multiple times.[3] Because Ms. Hawes had previously obtained a far more intelligible 3 page document listing the exact information she was requesting for a month in 2017 (Hawes Ex. 5), she reasonably believed that the Sheriff's Office was providing the information in the least intelligible form and had not produced a current version of Exhibit 5.

The evidence at the hearing, however, demonstrated that Exhibit 5 was a document that had been prepared for a specific County Commissioners' workshop by Alex Kimball, the county's Treasurer. Mr. Kimball had spent several hours manually preparing Exhibit 5 – cutting and pasting some of the information from a computer printout. Neither the Sheriff 's Office nor the County had a current version of that document, not was the information electronically stored in the format requested by Ms. Hawes. *See* 1 M.R.S. § 408(7).[4]

Under the Freedom of Access law, agencies are not required to create a record that does not exist. 1 M.R.S. § 408(6). Accordingly, the Sheriff's Office was not required to create a 2019 Jail Active Roster in the format sought by Ms. Hawes, and the court cannot find that Ms. Hawes is entitled to prevail on Count III of the amended complaint.

The court will make one other observation. Ms. Hawes is a longtime critic of the personnel policies at the Jail, and this has resulted in an adversarial relationship and a lack of trust on both sides. It is not clear that the Sheriff's office ever contacted Ms. Hawes to explain the problem with

---

[3] Exhibit A, offered by Ms. Hawes, is an excerpt from that document, consisting of a page and a half showing the entries for one employee.

[4] The county uses "Munis" software to process payroll, but the county does not have a Munis feature that would have allowed it to provide a record in a format sought by Ms. Hawes.

3

her November 24, 2019 request. If it had done so, it is not clear that Ms. Hawes would have accepted the explanation offered by the Sheriff's office. However, if there had been more communication, the parties and the court might have been spared litigation on this issue.[5]

Count I of the amended complaint remains unresolved. The most recent information provided to the court after the December 21, 2020 hearing is that additional records responsive to the November 17, 2019 request had been found and were being reviewed before copies could be provided to Ms. Hawes. The parties shall advise the court on or before February 24, 2021 as to the status of the remaining records involved in Count I.

Even if Ms. Hawes has now received all of the available records, she has made a request for attorney's fees and litigation costs on the ground that the responses of the Sheriff's Office to her requests were in bad faith. Because she is proceeding pro se, she is likely not entitled to attorney's fees, *see Kay v. Ehrler,* 499 U.S. 432, 435 & n. 5 (1991), but she could be entitled to litigation costs if the Sheriff's Office is found to have acted in bad faith

The entry shall be:

Judgment is entered for defendant on Count III of the amended complaint. Count I remains unresolved. The clerk shall incorporate this order in the docket by reference pursuant to Rule 79(a).

Dated: February 4, 2021

Thomas D. Warren
Justice, Superior Court

**Plaintiff–Susan M Hawes (Pro se)**
**Defendant–Michael Devine, Esq.**

Entered on the Docket: 02/09/2021

mcv

---

[5] Ms. Hawes stated at the hearing that through another FOAA request she had obtained a current employee list. The other information that prompted her request – a list of vacant positions – appears to be available from budget documents that have been made public.

4

STATE OF MAINE
CUMBERLAND, ss

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-2019-39

SUSAN HAWES,

       Plaintiff

v.

                                ORDER

CUMBERLAND COUNTY SHERIFF'S OFFICE,
et al.,

       Defendants

After considering the issues raised at a scheduling conference held on February 27, 2020, attended by plaintiff Susan Hawes, who is representing herself, and Attorney Michael Devine for defendants, the court orders as follows:

1. The court understands that Ms. Hawes does not object to the dismissal of Lauren Hrubowchak as a defendant. If this is incorrect, Ms. Hawes shall so notify the court and counsel for defendants in writing on or before March 13, 2020. If no such notice is received, the complaint shall be dismissed as against Hrubowchak without further notice.

2. Ms. Hawes agreed that Count II of her complaint can be dismissed as the document sought has been provided. So ordered.

3. The Sheriff's Office contends that after the amended complaint was filed, it provided Ms. Hawes with the document or documents responsive to the request that is the subject of Count III (November 24, 2019 request for current jail roster ). Ms. Hawes disagrees that what she received is what she requested. The parties agree that Ms. Hawes does need to amend count III to pursue her claim for a jail roster. The Sheriff's Office, if it wishes to do so, shall have until March 13 to file an amended answer to count III.

Plaintiff-Pro Se
Defendants-Michael Devine, Esq.

4. Ms. Hawes informed the court at the conference that she has a witness who is prepared to testify as to the existence of certain binders responsive to the request that is the subject of count I of the amended complaint (November 17, 2019 request for overtime records for the month of July 2019). On or before March 16, 2020 Ms. Hawes shall submit an offer of proof, identifying the witness and setting forth the substance of the testimony the witness will provide. Although not required, the offer of proof may be in the form of an affidavit.

5. Counsel for the Sheriff's Office suggested at the conference that 16 M.R.S. § 807 may prevent the Sheriff's Office from confirming or denying the existence of the records sought by Ms. Hawes in count I. As the court suggested at the conference, this would appear to be a vastly overbroad invocation of 16 M.R.S § 807.

6. 16 M.R.S § 807 applies to confirmation of "intelligence or investigative record information." The issue of whether the contents of the overtime records sought by Ms. Hawes are exempt from disclosure as intelligence and investigative record information remains to be decided. But if the Sheriff's Office contends that the mere existence or non-existence of overtime records itself constitutes "intelligence or investigative record information," the Sheriff's office shall – on or before March 16, 2020 – submit a memorandum of law with any legal argument or authority supporting that contention along with any supporting affidavits. It bears emphasis that some or all of the overtime records sought in this case are documents that are identified in the collective bargaining contract.

7. The court believes that it is required to establish "a fair process for all of the parties to present information . . . [to] create a meaningful and sufficient record" on which the court can adjudicate the FOAA claims. *Dubois v. Department of Agriculture,* 2018 ME 68 ¶ 12, 185 A.3d 743 (emphasis added). In *Dubois,* the specific documents at issue were submitted for *in camera*

2

review, but the court ordered the agency to prepare and provide to the plaintiffs an exceptions log itemizing the documents and the reasons those documents were redacted or withheld and to submit affidavits supporting the claim of exemption. *Id.* ¶ 4. Something similar, either through written submissions or at a short evidentiary hearing, shall likely be necessary in this case.

8. To the extent that the existence of records is disputed (e.g., whether overtime records are or were kept in binders or in some other form, and whether the document sought in count III of the amended complaint exists in the form that Ms. Hawes is requesting), this would appear to require a short evidentiary hearing.

9. Counsel for the Sherriff's office stated at the conference that the Sheriff's office may wish to offer testimony as well on issues other than the existence of responsive records and the exemptions claimed. On or before March 16, 2020 the Sheriff's office shall submit an offer of proof as to the proposed testimony, identifying the witness(as) and setting forth the substance of the testimony the witness(as) will provide. Although not required, the offer of proof may be in the form of an affidavit.

10. Counsel for defendants raised the possibility of taking a deposition of any witness identified by Ms. Hawes. At this time the court is not inclined to allow discovery, which appears unnecessary and will potentially delay the resolution of this action. Guided by *Dubois v. Department of Agriculture,* 2018 ME 68 ¶ 13, the court will deny any request for a depositions or other discovery unless the party seeking discovery first makes a showing that that there is good cause for such discovery.

11. Two additional legal issues have been raised: (1) The Sheriff's argument that since Ms. Hawes requested certain records in August 2019 and did not appeal from the denial of that request,

3

she is barred from relitigating her November 17, 2019 request;[1] and (2) the contention by Ms. Hawes that since the Sheriff's Office cited only 16 M.R.S. § 804(7) in denying her November 17, 2019 request, it may not now cite an additional exemption, 16 M.R.S. § 804(8), to support its position in this action. On or before March 23, 2020 Ms. Hawes and counsel for the Sheriff's office shall submit their legal arguments on those issues.

The entry shall be:

Procedural order entered. The clerk shall incorporate this order in the docket by reference pursuant to Rule 79(a).

Dated: March  2 , 2020

_____
Thomas D. Warren
Justice, Superior Court

**Entered on the Docket:** 03/03/20

REC'D CUMB CLERKS OFC
MAR 2 '20 PM3:10

---

[1] In this connection it appears to the court that Ms. Hawes's August request and her November 17 request – although addressed to the same general issue – are not identical.

4