Cite as 2022 Ark. 130

# SUPREME COURT OF ARKANSAS

No. CV-21-490

|  |  |
|---|---|
| | **Opinion Delivered:** June 9, 2022 |
| ARKANSAS DEPARTMENT OF COMMERCE, DIVISION OF WORKFORCE SERVICES<br>APPELLANT | |
| | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, SIXTH DIVISION |
| V. | [NO. 60CV-21-1257] |
| LEGAL AID OF ARKANSAS<br>APPELLEE | HONORABLE TIMOTHY DAVIS FOX, JUDGE |
| | AFFIRMED. |

**COURTNEY RAE HUDSON, Associate Justice**

Appellant Arkansas Department of Commerce, Division of Workforce Services

("DWS"), appeals from the Pulaski County Circuit Court's order requiring DWS to produce

unredacted documents in response to the Arkansas Freedom of Information Act ("FOIA")

request made by appellee Legal Aid of Arkansas ("Legal Aid"). For reversal, DWS argues that

the circuit court erred by finding that certain information was not exempt from disclosure

pursuant to (1) the law-enforcement exception contained in Arkansas Code Annotated

section 25-19-105(b)(6) (Supp. 2021) or (2) the competitive-advantage exception contained

in section 25-19-105(b)(9). We affirm the circuit court's ruling.

On October 13, 2020, Legal Aid submitted a FOIA request to DWS seeking information about how DWS and its third-party vendors determined eligibility for applicants of the Unemployment Insurance ("UI") and/or Pandemic Unemployment Assistance ("PUA") programs. After communication between the parties, Legal Aid submitted a second, narrower FOIA request on December 8, 2020. This request consisted of ten separate items designed to elicit the desired information; however, the only one at issue in this appeal is Item 10, which sought "[a]ll public records, including communications, created by, sent by, sent to, or otherwise provided to DWS employees between March 1, 2020, and present that contain the words 'algo' or 'algorithm' in singular or plural form." Legal Aid expressly noted that it was not requesting confidential information about any individual claimant.

DWS notified Legal Aid on December 18, 2020, that it had located two Outlook files pertaining to Item 10 but that it would take some time to review the 5.8 gigabytes of data and redact any confidential information. After DWS failed to provide a timeline for the production of the documents, Legal Aid filed suit on February 18, 2021. Legal Aid alleged in its petition that it had made its FOIA request after hearing from many claimants that were having trouble accessing their unemployment benefits, including months-long delays in processing claims, wrongful denials, unsubstantiated allegations of fraud or overpaid benefits, and lack of information about application procedures. According to the petition, DWS had provided neither the records responsive to the FOIA request nor a timeline for doing so despite extensive correspondence between the parties, and Legal Aid prayed that

the circuit court schedule a hearing within seven days and order DWS to produce the documents relevant to Item 10 within ten business days of the hearing.

The circuit court held a hearing on Legal Aid's petition on March 2, 2021. DWS's representative, Don Denton, testified that the records responsive to Item 10 were expected to comprise more than 42,000 pages of emails that had to be printed, reviewed, and redacted where necessary. The circuit court entered an order on March 12, 2021, finding that DWS was substantially justified in its delay responding to Legal Aid's FOIA request; however, the court ordered DWS to submit an estimated timeline for production of the records pertaining to Item 10 and to provide these records to Legal Aid on a weekly basis in accordance with its timeline. In a March 19, 2021 letter to the circuit court, DWS anticipated that based on the agency's current technological resources and staffing level, its review, redaction, and production process would be complete within twenty-five weeks.

On April 8, 2021, Legal Aid filed a motion for a conference, asserting that in the 6,000 pages produced thus far, DWS had redacted information that did not identify individual claimants or expose protected employee data. Rather, Legal Aid argued that DWS had redacted information about algorithms, or factors, that the agency uses in its processes to determine benefit eligibility. According to Legal Aid, when it communicated its concerns to DWS, the agency responded that disclosing the redacted information would allow "bad actors" to gain financially to the detriment of DWS and valid claimants and that it objected to disclosure under Ark. Code Ann. § 25-19-105(b)(9)(A). DWS further claimed that these bad actors were under investigation by federal and state law enforcement, that it was assisting

in these investigations, and that this information was also protected from disclosure under Ark. Code Ann. § 25-19-105(b)(6). Legal Aid argued in its motion that these exceptions to the FOIA were inapplicable and requested that DWS be ordered to produce this information. Following a second hearing held on April 22, 2021, the circuit court entered a May 3, 2021 order finding that DWS's redactions were justified pursuant to section 25-19-105(b)(6).

Legal Aid filed a motion to compel production on June 9, 2021, alleging that DWS had produced 2,103 files, totaling 47,977 pages, and that DWS had indicated that its response to the FOIA request was complete. Legal Aid argued that hundreds of pages had been redacted and that DWS's redactions pursuant to its claimed exemptions were improper. The motion requested that the circuit court hold an evidentiary hearing and conduct an in camera review of the documents to make an informed decision as to the correctness of the redactions. In its response, DWS continued to assert that the redactions were appropriate pursuant to sections 25-19-105(b)(6) and -105(b)(9).

The case was subsequently reassigned to a different circuit court judge after the original judge recused herself due to a conflict. On July 28, 2021, the circuit court entered an order granting Legal Aid's motion to compel. The court ordered that the unredacted documents be produced, that access to the documents be limited to counsel of record and their immediate support staff, that no electronic copies of the unredacted documents be created or stored, and that no publication of the documents be allowed. DWS filed a timely notice of appeal from this order.

On appeal, DWS first argues that its records containing the factors that it uses to identify fraud are exempt from disclosure under the FOIA pursuant to Ark. Code Ann. § 29-19-105(b)(6), the law-enforcement exception. The applicability of a FOIA exemption is a question of law that we review de novo. *Dep't of Ark. State Police v. Keech Law Firm*, 2017 Ark. 143, 516 S.W.3d 265; *Fox v. Perroni*, 358 Ark. 251, 188 S.W.3d 881 (2004). It is for this court to determine the meaning of a statute, and we are not bound by the circuit court's interpretation. *Perroni, supra*. We liberally interpret the FOIA to accomplish its broad and laudable purpose that public business be performed in an open and public manner, and we therefore construe the Act in favor of disclosure. *Myers v. Fecher*, 2021 Ark. 230, 635 S.W.3d 495; *Jones v. Prof'l Background Screening Ass'n, Inc.*, 2020 Ark. 362, 610 S.W.3d 640. While the FOIA contains exemptions, we interpret those exemptions narrowly, and "[i]f the intention is doubtful, openness is the result." *Keech*, 2017 Ark. 143, at 2–3, 516 S.W.3d at 267. The burden of proving an exemption to the FOIA rests with the keeper of the requested records claiming the exemption. *Orsini v. State*, 340 Ark. 665, 13 S.W.3d 167 (2000); *Young v. Rice*, 308 Ark. 593, 826 S.W.2d 252 (1992).

The FOIA, codified at Arkansas Code Annotated sections 25-19-101 et seq., (Repl. 2014 & Supp. 2021) opens all public records for inspection and copying by any Arkansas citizen. Ark. Code Ann. § 25-19-105(a). Section 25-19-105(b)(6), however, provides that

> It is the specific intent of this section that the following shall not be deemed to be made open to the public under the provisions of this chapter:
>
> . . .

(6) Undisclosed investigations by law enforcement agencies of suspected criminal activity[.]

We have consistently held that the purpose of this statutory exemption is to protect ongoing investigations. *Keech, supra*; *Martin v. Musteen*, 303 Ark. 656, 799 S.W.2d 540 (1990); *McCambridge v. City of Little Rock*, 298 Ark. 219, 766 S.W.2d 909 (1989). "[I]f a law enforcement investigation remains open and ongoing, it is meant to be protected as 'undisclosed' under the act." *Martin*, 303 Ark. at 660, 799 S.W.2d at 542.

DWS contends that the exemption in section 25-19-105(b)(6) applies to the information in its records regarding the factors, or algorithm, that it uses to screen applicants for PUA benefits because it is actively participating in an ongoing nationwide effort to combat fraudulent claims related to pandemic-inspired UI programs. According to DWS, these fraud factors are used to identify, investigate, and curb fraud in cooperation with the United States Department of Justice's National Unemployment Insurance Fraud Task Force, which includes multiple federal law enforcement agencies such as the United States Department of Labor—Office of Inspector General, the Federal Bureau of Investigation, and the Social Security Administration—Office of Inspector General. DWS argues that releasing the characteristics used to identify potentially fraudulent claims would severely undermine this concerted national effort.

Legal Aid responds that the law-enforcement exemption does not protect this information because (1) DWS is not a "law enforcement agency," (2) there is no open and ongoing investigation into suspected criminal activity, and (3) the withheld records are not

6

sufficiently investigative to fall within section 25-19-105(b)(6). We agree with Legal Aid that DWS is not a law-enforcement agency, and, on that basis alone, this exemption does not apply.

In *Legislative Joint Auditing Committee v. Woosley*, 291 Ark. 89, 722 S.W.2d 581 (1987), the appellee requested documents from the Legislative Joint Auditing Committee related to its audit of the Benton County Circuit Clerk's Office. The circuit court ruled that the records were not exempt from inspection under the FOIA, and the legislative committee appealed. *Id.* We affirmed the circuit court's ruling, holding that the information was not protected by any of the statutory exemptions argued by the committee, including the law-enforcement exception. *Id.* Although the committee claimed that the legislative auditor was required by statute to turn over any evidence of illegal transactions to the prosecutor, that the committee assists in the prosecuting attorney's investigations, and that premature disclosure of the documents at issue would interfere with the investigation, we held that the law-enforcement exemption "includes only agencies which investigate suspected criminal activity under the state penal code and have enforcement powers" and that the legislative committee was not a law enforcement agency within the meaning of the FOIA. *Id.* at 93, 722 S.W.2d at 583–84.

DWS contends that *Woosley*, *supra*, is distinguishable because several Arkansas statutes establish its authority to investigate and enforce suspected criminal activity. For example, DWS cites Arkansas Code Annotated section 11-10-106 (Supp. 2021), which authorizes penalties for false statements or representations related to unemployment-compensation benefits and provides that prosecutions for such violations may be initiated

7

by the DWS director, a field auditor, or other duly authorized agent of the director. In addition, Arkansas Code Annotated section 11-10-301(f)(1) (Supp. 2021) gives authority to the DWS director to initiate and prosecute all suits or other proceedings necessary for the collection of any taxes or overpayments collectible by him or her. DWS further cites Arkansas Code Annotated section 11-10-306 (Supp. 2021), which authorizes the director to set up and maintain an enforcement unit that may audit, investigate, hold hearings, take testimony, and subpoena witnesses.

As Legal Aid argues, however, none of the statutory provisions referenced by DWS authorizes it to conduct criminal investigations. Rather, these statutes allow DWS to conduct administrative investigations and hearings, initiate civil-collection actions, and refer matters to law enforcement agencies for criminal prosecution. While DWS also points to the Theft of Public Benefits statutes, Arkansas Code Annotated sections 5-36-201 and -202 (Repl. 2013), which are found in the Criminal Code, the authority to prosecute such criminal actions lies with the prosecuting attorney. Ark. Code Ann. § 16-21-103 (Repl. 2016). In addition, Ark. Code Ann. § 11-10-319(b) provides that "[a]ll criminal actions for violations of any provisions of this chapter, or any rule or regulation issued pursuant thereto, shall be prosecuted by the Attorney General of the state, or by the prosecuting attorney of the county in which the violation occurred." A prosecuting attorney may deputize an attorney of an appropriate state agency to prosecute an offense; however, the discretion to do so rests with the prosecutor. Ark. Code Ann. § 5-36-206 (Repl. 2013). Thus, DWS is unequivocally not a law enforcement agency to which the exemption in section 25-19-105(b)(6) for undisclosed

investigations of suspected criminal activity applies, and the circuit court correctly ruled that DWS was not entitled to redact its public records on this basis.[1]

In reaching the opposite conclusion, the dissent fails to give effect to the plain language in section 11-10-319. This statute clearly authorizes only the Attorney General or prosecuting attorney to prosecute criminal violations of Chapter 10 of Title 11 of the Arkansas Code, the "Division of Workforce Services Law," which is the chapter at issue here. Ark. Code Ann. § 11-10-319(b). While section 11-10-106(e) generally provides that prosecutions for the violation of any provisions of that chapter may be initiated by the director or authorized agent of the director, section 11-10-319 distinguishes between civil and criminal actions and specifically states that it is only *civil* enforcement actions that may be brought by the director or other qualified attorney employed by the director. Ark. Code Ann. § 11-10-319(a) (emphasis added); *see also Johnson v. Wright*, 2022 Ark. 57, 640 S.W.3d 401 (stating that when statutes seemingly conflict, it is blackletter law for statutory construction to give effect to the specific statute over the general).

---

[1]DWS also urges this court to look to the federal FOIA exemption for records compiled for law enforcement purposes and to federal cases interpreting this provision. However, the federal exemption is written much more broadly than Arkansas's corresponding exemption and is not expressly limited to investigations of criminal activity; thus, cases analyzing the federal exemption are not persuasive here. *See* 5 U.S.C. § 552(b)(7) (2016). *See also* John J. Watkins, Richard J. Peltz-Steele, and Robert Steinbuch, *The Arkansas Freedom of Information Act*, § 3.04[b][8][A] (Univ. of Ark. Press, 6th ed. 2017) (stating that the federal FOIA and some state statutes are broad enough to encompass not only those agencies with criminal-law enforcement duties but also regulatory agencies that can seek civil or administrative sanctions).

DWS next contends that the redacted records were exempt pursuant to Arkansas Code Annotated section 25-19-105(b)(9)(A), which protects "[f]iles that if disclosed would give advantage to competitors or bidders[.]" According to DWS, this exemption applies to the fraud factors that it sought to protect from disclosure because bad actors are competing with valid claimants to unlawfully obtain economic benefits from it and other state agencies. DWS argues that it has an interest in protecting the integrity of the state's UI system and in ensuring that "fraudsters" do not obtain the information they need to circumvent DWS's fraud-detection efforts. In support of its argument that it is entitled to claim this exemption on behalf of the State as well as lawful UI applicants, DWS cites *Arkansas Department of Finance & Administration v. Pharmacy Associates, Inc.*, 333 Ark. 451, 970 S.W.2d 217 (1998).

In *Pharmacy Associates*, the Arkansas Department of Finance and Administration ("DFA") solicited bids for a pharmacy-benefit manager to provide prescription-drug benefits for state employees. DFA awarded the contract to Merck-Medco Managed Care, Inc. ("Medco"), and Pharmacy Associates, Inc., sought disclosure of Medco's successful bid proposal. Pharmacy Associates filed suit under the FOIA after DFA produced the documents with certain proprietary information redacted. *Id.* The circuit court found that the competitive-advantage exemption applied to the information that Medco and DFA sought to protect but nevertheless ordered DFA to release the information because the exemption did not apply when the State owns the documents or does not have a proprietary interest in the information. *Id.* On appeal, this court reversed, noting that the FOIA applies only to documents in the possession of the State and therefore the statutory exemption would be

10

meaningless if it did not apply because the information was owned by the State. *Id.* We further stated that the exemption, by its plain language, does not require the State to possess a proprietary interest in the files and that "the issue is whether release of the information would result in competitive harm to the person who supplied it." *Id.* at 457–58, 970 S.W.2d at 220. We further noted that the State had a special interest in protecting a bidder's confidential information because disclosing it would be detrimental to the quality of the information it receives in response to the bidding process in the future. *Id.* at 458–59, 970 S.W.2d at 220–21. We stated that it was this type of harm that the competitive-advantage exception was intended to prevent and that protecting this information from disclosure was consistent with the rule of narrow statutory construction and the intent of the General Assembly. *Id.* at 459, 970 S.W.2d at 221.

Legal Aid contends, however, that in contrast with the situation at issue in *Pharmacy Associates*, *supra*, it is not reasonable to interpret the competitive-advantage exemption to apply to "competing" applicants for public benefits. Legal Aid cites *Arkansas Highway & Transportation Department v. Hope Brick Works, Inc.*, 294 Ark. 490, 496, 744 S.W.2d 711, 714 (1988), wherein we held that the intent of this exception is "to prevent competitors from obtaining information about others seeking the same type of work or furnishing material to the state." In that case, the appellee requested copies of all opinions of real-estate appraisers that formed the basis of the highway department's offer to purchase the appellee's land, which the highway department needed in order to relocate a highway. *Id.* at 492, 744 S.W.2d 712. We stated that the exemption had no application to the factual situation in that case

11

because the appellee was clearly not competing with the highway department or with any other parties seeking a contract with the department. *Id.* at 496, 744 S.W.2d at 714. As in *Hope Brick Works*, *supra*, Legal Aid argues unemployment claimants are not competing for the same type of work or furnishing materials to the state and that the unambiguous language in section 25-19-105(b)(9) does not protect the information being withheld by DWS.

Interpreting the competitive-advantage exemption narrowly, as we must, we agree with the circuit court's refusal to apply this exemption to the information that DWS is seeking to protect. Applicants for unemployment benefits are not "competitors" or "bidders" within the plain language of section 25-19-105(b)(9)(A). This exemption is intended to protect "trade secrets and other proprietary information businesses submit to governmental entities to satisfy regulatory requirements or for other purposes." *See* John J. Watkins, Richard J. Peltz-Steele, and Robert Steinbuch, *The Arkansas Freedom of Information Act*, § 3.04[b][11] (Univ. of Ark. Press, 6th ed. 2017). While DWS argues that we should employ a common-sense approach and determine that this exception also applies to its fraud factors and algorithms, it is the job of the General Assembly to establish exemptions to the FOIA, and this court can only interpret the exemption as it is written. *Hopkins v. City of Brinkley*, 2014 Ark. 139, 432 S.W.3d 609. Accordingly, because neither FOIA exemption argued by DWS applies in this case, we affirm the circuit court's order finding that the unredacted records should be produced.

Affirmed.

WOOD, J., concurs without opinion.

WOMACK and WEBB, JJ., dissent.

**SHAWN A. WOMACK, Justice, dissenting.** For the reasons discussed in my dissent in *Thurston v. League of Women Voters of Arkansas*, 2022 Ark. 32, at 16, 639 S.W.3d 319, 327, sovereign immunity bars this FOIA action against the Division of Workforce Services, a state agency. Ark. Const. art. 5, § 20. Accordingly, I would reverse the circuit court's order and dismiss the underlying action.

I respectfully dissent.

**BARBARA W. WEBB, Justice, dissenting.** Very recently, in this same term, we set a precedent that expanded what had been our narrow interpretation of an exception to the Freedom of Information Act (FOIA) as it relates to law enforcement. *Ark. State Police v. Racop*, 2022 Ark. 17, at 5–6, 638 S.W.3d 1, 4. In *Racop*, we specifically found that using publicly available information to determine features about law enforcement operations and investigations fell within an exception to FOIA disclosure. *Id.* However, we now abandon that precedent, ignore *stare decisis*, and leave the public to gamble that disclosure and exemption will be at the whim of the judiciary on any given day.

Arkansas Code Annotated section 25-19-105(b)(6) (Supp. 2021) exempts "undisclosed investigations by law enforcement agencies of suspected criminal activity" from being disclosed pursuant to FOIA. In order to qualify for this exemption, an agency must investigate suspected criminal activity under the state penal code and have enforcement powers. *Legislative Joint Auditing Comm. v. Woosley*, 291 Ark. 89, 93, 722 S.W.2d 581, 584

13

(1987). The majority contends that the Department of Workforce Services (DWS) is not such an agency. However, the majority is wrong.

It is a crime to make a false statement or fail to disclose a material fact to obtain or increase any benefit-related unemployment insurance (UI) or pandemic unemployment assistance (PUA) program. Ark. Code Ann. § 11-10-106(a)–(c) (Supp. 2021). Each separate statement or act is a separate offense. *Id.* The criminal penalty increases for willful violations. *Id.* at 11-10-106(c). All criminal actions for violations of these statutes are required to be prosecuted by the Attorney General of the state, or by the prosecuting attorney of the county in which the violation occurred. *Id.* at § 11-10-319(b).

Unique to DWS, prosecutions for the violation of any of the criminal provisions of Ark. Code Ann. § 11-10-106 may also be commenced by "the filing of information in any court having jurisdiction, without bond for costs, *by the director*, any field auditor, or other duly authorized agent of the director." Ark. Code Ann. § 11-10-106(e)(1) (emphasis added). Not only can the director file his or her own criminal charges, but he or she can prosecute appeals from any verdicts or rulings which are adverse to the State, without appeal bonds, by the filing of a petition for appeal. *Id.* at § 11-10-106(e)(2). Finally, the director has the authority to create and maintain a unit known as the "Enforcement Unit." Ark. Code Ann. § 11-10-306(g)(1)–(2) (Supp. 2021). This unit is required to be maintained by a staff adequate to make investigations, hold hearings, and take testimony in connection with the enforcement of laws related to DWS to the end that fraudulent claims on the part of

14

claimants and the violation of this chapter on the part of employers may be curtailed to the minimum possible. *Id.*

Clearly, DWS has the power to conduct criminal investigations of violations, refer those violations for mandatory criminal prosecution, or initiate criminal prosecutions on its own. This includes the UI and PUA fraud that is the subject of the FOIA request at issue in the case at bar. *Id.* at § 11-10-106. It is rather confounding that the majority cannot detect that DWS has a criminal investigative function when there are crimes spelled out in our statutes related to UI and PUA, criminal prosecutions by the attorney general and prosecuting attorney are mandatory, and DWS can initiate and prosecute its own criminal charges.

The majority makes much ado about DWS referring its cases to a prosecutor or the Attorney General for prosecution. It assumes that this referral requirement (which ignores DWS's ability to bring its own criminal cases) means it is not a criminal investigative agency. The majority overlooks that police and sheriff departments cannot bring their own felony criminal cases either! *State v. Brooks*, 360 Ark. 499, 505, 202 S.W.3d 508, 512 (2005) (each prosecutor in each district has the sole authority, with grand jury's concurrent authority, to bring charges within that district); *McGrew v. State*, 338 Ark. 30, 33, 991 S.W.2d 588, 590 (1999) (citing *Archer v. Benton Cnty. Circuit Court*, 316 Ark. 477, 480, 872 S.W.2d 397, 399 (1994)) (felonies must be charged by either grand jury indictment or by information filed by the prosecuting attorney); *State v. Knight*, 318 Ark. 158, 162, 884 S.W.2d 258, 260 (1994) (citing Ark. Const. amend. 21, § 1); *State v. Murphy*, 315 Ark. 68, 72–73, 864 S.W.2d 842,

15

844 (1993) (the prosecutor has the discretion to determine which charges to file). While a traditional law enforcement agency has the authority to issue citations for misdemeanors, the citations themselves are not criminal charges. Ark. R. Crim. P. 5.1(a). Instead, they are a written order to appear in a designated court or governmental office at a specified date and time. *Id.* Under the majority's reasoning in this case, sheriff and police departments are not criminal investigative agencies. The majority's analysis and its natural conclusion is *non sequitur*.

The algorithm at issue is used by DWS to detect possibly fraudulent claims. In other words, it is used to detect violations of § 11-10-106—the insurance-fraud statute with a criminal penalty. To the extent that it detects those violations, they are open and ongoing investigations into criminal activity related to unemployment-insurance fraud. This fits with the only purpose of the law-enforcement-investigation exemption, which, as written, is to prevent interference with ongoing investigations. *Martin v. Musteen*, 303 Ark. 656, 659, 799 S.W.2d 540, 542 (1990). Even further bolstering this conclusion is the fact that DWS is working with federal law enforcement authorities—the FBI, IRS, United States Office of Inspector General, and the United States Department of Labor—to detect, prevent, and prosecute insurance fraud. **(RP 147, ¶ 6)**; **(RP 385–86)**. **(RP 388–90)**. DWS was clear to Legal Aid and the circuit court that the information sought by Legal Aid was part of state and federal criminal investigations. **(RP 168)**. These same points were argued to the circuit court's eleventh division, which initially held the information sought by Legal Aid was part of a law enforcement investigation. **(RT 229)**. **(RT 231–33)**. *See also* **(RT 156)** (order stating

16

that "[t]he court finds that ADWS's redactions are justified pursuant to . . . § 25-19-105(b)(6))."

It is true that the police and prosecutors should not be permitted to apply this exemption as a matter of course until conviction or acquittal, or indefinitely until a charge is brought, if there is no genuine interest in enduring secrecy. *Dep't of Ark. State Police v. Keech Law Firm, P.A.*, 2017 Ark. 143, at 4–5, 516 S.W.3d 265, 268 (citing John J. Watkins, Richard Peltz-Steele, and Robert Steinbuch, *The Arkansas Freedom of Information Act* 148 (6th ed. 2017)). "[I]f a law enforcement investigation remains open and ongoing it is one meant to be protected as 'undisclosed' under the act." *Id.* at 3, 516 S.W.3d at 267 (citing *Martin v. Musteen*, 303 Ark. 656, 660, 799 S.W.2d 540, 542 (1990)). Whether an investigation is open and ongoing is a question of fact for the circuit court to decide. *Id.* The circuit court had already found that the law enforcement exception applied on May 3, 2021. There is nothing in the record to justify the circuit court's change of position after the case was transferred from the eleventh division to the sixth division.

Instead, there was ample evidence that the algorithm was being used for ongoing investigations and detection of the crime of unemployment-insurance fraud, which was exacerbated and prolific due to the pandemic. Bolstering this conclusion is the fact that the circuit court ordered that only the attorneys and their staff have access to unredacted information. Such a conclusion is apposite to the FOIA statutes and the fact that the circuit court itself felt that there should not be unredacted copies released to the public or even the parties further evinces that this information is not subject to disclosure under FOIA.

17

Applying our standard of review, the circuit court made a clearly erroneous interpretation of the law related to DWS's status as an agency empowered to investigate crime and was clearly against the preponderance of the evidence that the algorithm was part of an ongoing criminal investigation into insurance fraud that spanned not only Arkansas but our entire country.

It is deeply troubling that the majority takes a broad reading and interpretation of FOIA in *Racop* and then decides to take a narrow reading of the same statute in this case. The effect is the appearance that we read and interpret statutes to effectuate outcomes rather than uphold our duty to faithfully apply the law. The question of how this court interprets a statute—the manner in which it reads the statute and determines its meaning—should be uniform. The public should be able to predict our analysis and conclusions with some degree of reasonable certainty. It should not be a game of chance, affected by the direction in which the political winds are blowing, or influenced by public sentiment. We fail to uphold the doctrine of *stare decisis* when we read a statute one way in February but read the same statute entirely apposite in May.

The algorithm is used only when an investigation is underway, and it has no purpose outside an ongoing investigation into fraudulent activity. The legislature tasked DWS with investigating activities that harm the public and the majority hamstrings the agency by releasing the tools they use to investigate those activities to the public. The effect of the majority's holding will result in more fraudulent claims being paid. Ultimately, its effect is to reallocate wealth from hard working taxpayers to unqualified criminals. This unconsciously affronts the principles of our republic and our State.

18

When law enforcement agents and investigations are not in jeopardy, it is my interpretation of the FOIA that the information should be disclosed as the media and the public have a broad and powerful right to the information held by their government. However, this case presents a situation where disclosure would harm a criminal investigation at the expense of the public. For these reasons, I dissent.

*Leslie Rutledge*, Att'y Gen., by: *Kat Hodge* , Sr. Ass't Att'y Gen., for appellant.

*Trevor Hawkins*, Legal Aid of Arkansas, for appellee.